**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AMY SNYDER, JAMES WINGO, and STACI FOSTER WHITNEY, on behalf of themselves and all others similarly situated,<br><br>                                   Plaintiffs<br><br>              v.<br><br>THE CIGNA GROUP, CIGNA HEALTH AND LIFE INSURANCE CO., and CIGNA HEALTH MANAGEMENT, INC.<br><br>                                   Defendants. | Civil Action No. _____<br><br>Class Action<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiffs Amy Snyder, James Wingo, and Staci Foster Whitney bring this proposed class action against the Cigna Group, Cigna Health and Life Insurance Company, and Cigna Health Management, Inc. (collectively, "Cigna" or "Defendants"), individually and on behalf of all others similarly situated, upon personal knowledge as to Plaintiffs' own conduct, and on information and belief as to all other matters based on investigation by counsel.[1]

## I.      NATURE OF THE ACTION

1.      While Americans have faced ever increasing healthcare costs, Cigna has engaged in a widespread, systemic practice of automatically reviewing Medical Claims[2] instead of performing an actual and meaningful review of those claims as it was required to do under the law. Cigna used this algorithm both to cut costs associated with performing an actual and meaningful review of Medical Claims and to wrongfully deny Medical Claims that should be covered under patients' Health Benefit Plans.[3]

2.      Specifically, Cigna has perpetrated an illegal scheme whereby it uses an algorithm known as procedure-to-diagnosis ("PxDx" or "PXDX") to automatically review patients' Medical Claims, without conducting the thorough, actual, and meaningful medical review and analysis of claims required by law and contract.  As a result, Plaintiffs and members of the Classes are not provided the claims review process to which they are entitled under the law and their insurance contracts.  Cigna also uses the PXDX system to wrongfully deny certain Medical Claims, which

---

[1]      Counsel's investigation includes an analysis of publicly available information.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

[2]      As used herein, "Medical Claims" or "claims" includes claims for coverage of medical goods, services, tests, treatments, procedures, and/or prescription drugs.

[3]      As used herein, "Health Benefit Plan" includes self-insured health benefit plans, multi-employer health benefit plans, other employer-sponsored health benefit plans, and insurance plans offered directly by Cigna.

can cause insureds to pay out of pocket for much needed medical procedures that should be covered under patients' Health Benefit Plans.

3.      The PXDX algorithm allows Cigna to instantly review and reject batches of claims on purported medical grounds without ever opening a patient's file or performing an actual claims review.

4.      Cigna's PXDX algorithm has the ability to automatically review and deny millions of medical claims a year, leaving patients without an actual and meaningful review of their claims and often leaving them without coverage and/or with unexpected medical bills.

5.      In the words of U.S. Senator Richard Blumenthal, when such algorithms are used to deny medical claims, the "denials they generate are too systematic to ignore" and "[a]ll too often, black-box AI and algorithms have become a blanket mechanism for denial."[4]

6.      Indeed, it has been reported that over a period of two months in 2022, Cigna automatically "reviewed" and denied over 300,000 medical claims using PXDX, spending an average of just 1.2 seconds purportedly "reviewing" each claim.  Moreover, Cigna knows that after it automatically denies insureds' claims, most patients will pay for medically necessary tests and procedures themselves rather than expend the substantial time and expense necessary to appeal a denial.

7.      The PXDX algorithm allows Cigna to unlawfully profit by saving the labor costs associated with an actual and meaningful review of Medical Claims, and by denying Medical Claims that Cigna and other Health Benefit Plans were obligated to cover, while unsuspecting

---

[4]     *Examining Health Care Denials and Delays in Medicare Advantage* at 2, Opening Statement of Richard Blumenthal, Chairman, U.S. Sen. Permanent Subcommittee on Investigations Homeland Security and Governmental Affairs Committee (May 17, 2023), https://www.hsgac.senate.gov /wp-content/uploads/2023-05-17-Chair-Blumenthal-Opening-Statement.pdf.

patients overpay for insurance coverage and services and/or foot the bill for Medical Claims that are supposed to be covered under their Health Benefit Plans.

8.      Plaintiffs and members of the Classes had their claims automatically denied by Cigna using the PXDX system.  Wherein, Cigna failed to provide Plaintiffs and members of the Classes an actual and meaningful review of their claims as required by law and contract thereby causing Plaintiffs and members of the Classes to overpay for their insurance contracts and services, substantially undermining the benefit of their bargain, and/or causing them to pay for Medical Claims that are otherwise covered under their Health Benefit Plans.

9.      By engaging in this misconduct, Cigna has, among other things, violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, breached the terms of its insurance contract with insureds and/or the terms of its claims administration contracts, of which Plaintiffs and members of the Classes were intended third party beneficiaries, and breached its fiduciary duties, including the duty of good faith and fair dealing, to which it owes patients whose Medical Claims it reviews, including Plaintiffs and members of the Classes.  As a direct and proximate result of these breaches, Plaintiffs and members of the Classes have not received the insurance coverage and/or services they paid for, including claims review and administration services, and in many cases, were required to pay out of pocket for Medical Claims that should have been covered pursuant to the terms of their Health Benefit Plans.  Through this misconduct, Cigna: (1) has violated common law with respect to Plaintiff Snyder and other similarly situated class members who receive insurance coverage under a Health Benefit Plan that is not established or maintained under ERISA (the "non-ERISA Class"); and (2) has violated ERISA with respect to Plaintiffs Wingo and Whitney and other similarly situated class members

who receive insurance coverage under a Health Benefit Plan that is established or maintained under ERISA (the "ERISA Class").

10.     In the course of conducting its business, Cigna misrepresented its insurance and claims administration services and willfully failed to disclose, and actively concealed, the fact that it does not provide an actual and meaningful analysis of Medical Claims submitted by patients through their Health Benefit Plans, and instead, automatically reviews and denies claims pursuant to the PXDX algorithm.   Cigna also misrepresented its insurance and claims administration services while omitting and concealing that instead of actually reviewing Medical Claims, it employs the PXDX algorithm to automatically review and deny claims submitted under Health Benefit Plans.

11.     Plaintiffs, on behalf of themselves and the putative Classes, seek to remedy Cigna's unlawful conduct and illegal profiteering and to recover all compensatory, punitive, injunctive, equitable, and all other relief as permissible by law on behalf of themselves and the putative Classes.

## II.     PARTIES

12.     Plaintiff Amy Snyder resides in Washington, D.C., and is employed by Arlington Public Schools in Arlington, Virginia.   Plaintiff Snyder is enrolled in a Health Benefit Plan issued by Arlington Public Schools, which entered into an agreement with Cigna to have claims administered by Defendant Cigna Health and Life Insurance Co.   While enrolled in a Health Benefit Plan administered by Cigna Health and Life Insurance Co., Plaintiff Snyder received a denial letter issued by Defendant Cigna Health Management, Inc. denying a claim pursuant to the PXDX algorithm and informing Plaintiff Snyder that the medical testing ordered by her doctor was purportedly "not medically necessary."   The PXDX denial letter received by Plaintiff Snyder

4

was signed by Cigna employee, Paul Rossi DO, Medical Director.  It further informed Plaintiff Snyder that $299.16 in charges for the testing would not be paid by her Health Benefit Plan.

13.     Plaintiff James Wingo resides in Boerne, Texas, and is employed by the W.R. Berkley Corporation in San Antonio, Texas.  Plaintiff Wingo is enrolled in a Health Benefit Plan issued by W.R. Berkley, which entered into an agreement with Cigna to have claims administered by Defendant Cigna Health and Life Insurance Co.  While enrolled in a Health Benefit Plan administered by Defendant Cigna Health and Life Insurance Co., Plaintiff Wingo received at least two denial letters issued by Defendant Cigna Health Management, Inc. denying claims pursuant to the PXDX algorithm and informing Plaintiff Wingo that the services rendered are "not medically necessary."  The PXDX denial letter, dated May 31, 2023, that Plaintiff Wingo received was signed by Cigna employee, Melvin Watson, MD, Medical Director, and informed Plaintiff Wingo that $241.84 in charges for treatment would not be paid by his Health Benefit Plan.  Another PXDX denial letter, dated September 21, 2023, that Plaintiff Wingo received was signed by "Cigna Healthcare" and informed Plaintiff Wingo that $167.00 in charges for treatment to his dependent would not be paid by his Health Benefit Plan.

14.     Plaintiff Staci Foster Whitney resides in Mauerpas, Louisiana.  Her spouse, Ashly M. Whitney, is employed by Waste Management.  Plaintiff Whitney is enrolled as a dependent in a Health Benefit Plan issued by Waste Management, which entered into an agreement with Cigna to have claims administered by Defendant Cigna Health and Life Insurance Co.  While enrolled in a Health Benefit Plan administered by Cigna Health and Life Insurance Co., Plaintiff Whitney received at least two denial letters issued by Defendant Cigna Health Management, Inc. denying a claim pursuant to the PXDX algorithm and informing Plaintiff Whitney that it would not cover the service provided by her doctor "because it is experimental, investigational or unproven for the

diagnosis."  The PXDX denial letters received by Plaintiff Whitney were signed "Cigna Healthcare."  The letters further informed Plaintiff Whitney that $1,096.00 and $2,002.00 in charges for the service would not be paid by her Health Benefit Plan.

15.     Defendant the Cigna Group is a Delaware corporation with a principal place of business in Bloomfield, Connecticut.  The Cigna Group is a for-profit American multi-national managed healthcare and insurance company.  Prior to February 23, 2023, the Cigna Group was known as the Cigna Corporation.

16.     Defendant Cigna Health and Life Insurance Co. ("Cigna Health and Life") is a Connecticut corporation with its principal place of business in Bloomfield, Connecticut.  Cigna Health and Life is a subsidiary of Defendant the Cigna Group.

17.     Defendant Cigna Health Management, Inc. is a Delaware corporation with a principal place of business in Philadelphia, Pennsylvania.  Upon information and belief, Defendant Cigna Health Management, Inc. is a subsidiary of Defendant the Cigna Group.

## III.     JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332(d)(2).  This is a class action in which there is a diversity of citizenship between at least one member of the Classes and one Defendant; the proposed Classes each exceed one hundred members; and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

19.     This Court also has subject matter jurisdiction over this action pursuant to (a) 28 U.S.C. §1331, which provides for federal jurisdiction over civil actions arising under the laws of the United States, including ERISA; and (b) 29 U.S.C. §1132(e)(1) providing for federal jurisdiction of actions brought under Title I of ERISA as certain members of the Classes are governed by ERISA.

20.     This Court also has supplemental jurisdiction over non-ERISA state law claims pursuant to 23 U.S.C. §1367.

21.     This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Connecticut; Defendants are authorized to do business in the State of Connecticut; Defendants conduct business in the State of Connecticut and this District; Defendant the Cigna Group, which Defendant Cigna Health Management, Inc. is a subsidiary of, and Defendant Cigna Health and Life Insurance, Co. have principal executive offices and Defendants provide medical products and services in the State of Connecticut and this District.  Defendants intentionally avail themselves of the markets in this State through the promotion, marketing, and operations of their platforms at issue in this lawsuit in Connecticut, and by retaining the profits and proceeds from these activities, to render the exercise of jurisdiction by this Court permissible under Connecticut law.

22.     Venue is proper in this District pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because the Defendants reside or may be found in this District and some or all of the fiduciary breaches or other violations for which relief is sought occurred in or originated in this District.  Venue is proper in this District under 28 U.S.C. §1391(b) and (c)(2), because Defendant the Cigna Group, which Defendant Cigna Health Management, Inc.  is a subsidiary of, and Defendant Cigna Health and Life are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Defendants have caused harm to members of the Classes residing in this District and Defendants regularly conduct business in this District.

**IV.   FACTUAL ALLEGATIONS**

**A.   Cigna Has Engaged in a Scheme to Automatically Review and Deny Medical Claims Through PXDX**

23.     Cigna's 18 million insureds, and individuals who have their Medical Claims administered by Cigna under their Health Benefit Plans, submit Medical Claims for health insurance coverage with the expectation and promise that they will receive an actual and meaningful review of their Medical Claims and will receive coverage for medical services as set forth in the insurance policies sold and/or administered by Cigna.

24.     Cigna represents that it will provide "quality plan options, personalized health care support, and low costs" in addition to "access to the expertise and care [patients] need, when [they] need it."[5]

25.     Moreover, Plaintiffs and similarly situated insureds are legally entitled to an actual and meaningful review of their Medical Claims.

26.     In stark contrast to Cigna's contractual and legal obligations and promises to its insureds, Cigna has engaged and, upon information and belief, continues to engage in, systemic automatic review of Medical Claims pursuant to PXDX, instead of performing an actual and meaningful review of claims.

27.     A March 2023 ProPublica article revealed that Cigna has developed an algorithm called PXDX that it uses to automatically review and deny medical claims without an actual and

---

[5]     Health Insurance Plans for Individuals and Families, Cigna, https://www.cigna.com/individuals-families/shop-plans/health-insurance-plans/ (last visited Oct. 31, 2023).

meaningful review of those claims and without a reasonable investigation into the medical records supporting the patient's medical claim.[6]

28.     As an example, ProPublica reported that, over a period of two months, Cigna doctors "reviewed" and denied over 300,000 Medical Claims requesting coverage by using PXDX. Notably, the doctors supposedly reviewing these Medical Claims spent an average of 1.2 seconds on each claim.   Moreover, the same report details that some doctors that Cigna hires to review Medical Claims and make coverage determinations average tens of thousands of purported "reviews" and denials a month.[7]  This astounding rate of automatic reviews and denials of Medical Claims pursuant to PXDX is performed in a manner contrary to the obligations Cigna owes the individuals whose claims it administers to provide an actual and meaningful review of their Medical Claims.

29.     Indeed, to avoid unfair denials, "[b]efore health insurers reject claims for medical reasons, company doctors must review them, according to insurance laws and regulations in many states.  Medical directors are expected to examine patient records, review coverage policies and use their expertise to decide whether to approve or deny claims."[8]

30.     However, Cigna uses PXDX to sidestep its legal obligation, and contractual promises, to meaningfully review Medical Claims before making coverage determinations.  As former Cigna employees familiar with PXDX have explained, when PXDX is used to evaluate claims "[m]edical directors do not see any patient records or put their medical judgment to use"[9]

---

[6]     Patrick Rucker, et al., *How Cigna Saves Millions by Having Its Doctors Reject Claims Without Reading Them*, PROPUBLICA (Mar. 25, 2023), https://www.propublica.org/article/cigna-pxdx-medical-health-insurance-rejection-claims.

[7]     *Id.*

[8]     *Id*.

[9]     *Id*.

when "reviewing" and before deciding to deny a claim.  Tellingly, a former medical claims reviewer for Cigna stated: "We literally click and submit. . . . It takes all of 10 seconds to do 50 [claims] at a time."[10]

31.     The fact that PXDX bypasses an actual and meaningful review of insureds' Medical Claims was confirmed by the inventor of this program who has stated: "The PXDX stuff is not reviewed by a doc or nurse or anything like that."[11]

32.     Further, Cigna has put in place additional tracking tools to ensure that its scheme to automatically review and systemically deny Medical Claims in mass is successful.  Specifically, "Cigna carefully tracks how many patient claims its medical directors handle each month" and "[t]welve times a year, medical directors receive a scorecard in the form of a spreadsheet that shows just how fast they have cleared PXDX cases."[12]

33.     These tracking tools are effective means of ensuring that Cigna's medical directors participate in Cigna's wrongful scheme to automatically review Medical Claims by using PXDX, instead of performing an actual and meaningful review and to automatically, and wrongfully, deny Medical Claims.  As ProPublica reported, one of Cigna's doctors, Cheryl Dopke, "rejected 121,000 claims in the first two months of 2022, according to the scorecard[,]" while "another Cigna medical director, handled more than 80,000 instant denials in the same time span."[13]  Additionally, Dr. Paul Rossi, who "has been a medical director at Cigna for over 30 years," also "denied more than 63,000 PXDX claims in two months" in early 2022.[14]  As noted above, Dr. Rossi is the doctor who

---

[10]     *Id.*

[11]     *Id.*

[12]     *Id.*

[13]     *Id.*

[14]     *Id.*

performed the purported "review" and denial of Plaintiff's Snyder's Medical Claims by using the PXDX algorithm.

34.     Moreover, as Cigna is well aware, the appeals process provides no actual recourse for the vast majority of patients affected by Cigna's automatic review scheme.  Indeed, "[t]he PXDX list is focused on tests and treatments that typically cost a few hundred dollars each, said former Cigna employees" therefore "Cigna knows that many patients will pay such bills rather than deal with the hassle of appealing a rejection, according to . . . former employees of the company."[15]  Tellingly, "[i]n one corporate document, Cigna estimated *that only 5% of people would appeal a denial resulting from a PXDX review*."[16]

35.     These low rates of appeals have led to numerous patients paying out of pocket for medical bills associated with Medical Claims that should have been covered by their Health Benefit Plans.  Indeed, after ProPublica brought Cigna's wrongful conduct to light, the U.S. House of Representatives Committee on Energy and Commerce, issued a letter to the President and CEO of the Cigna Group asking for information and noting that while only five percent (5%) of individuals covered under insurance policies whose claims were denied by Cigna's medical necessity algorithm appealed the decision, 20% of members enrolled in Medicare Advantage plans whose claims were similarly denied appealed the decision, and a full 80% of those denials were reversed on appeal.  The letter suggested that Cigna's improper denials on medical necessity

---

[15]     *Id*.

[16]     *Id*. (emphasis added.)

grounds were "leading to patients paying out-of-pocket for medical care that should be covered under their insurance policy contract."[17]

### B.   Cigna Has Perpetuated Its Automatic Review and Wrongful Denial Scheme for Years

36.   Upon information and belief, the PXDX system was developed over a decade ago by a doctor employed by Defendant the Cigna Group (formerly known as Cigna Corporation).

37.   In 2010, the Cigna Group employee, Dr. Alan Muney ("Muney"), was "managing health insurance for companies owned by Blackstone, the private equity firm, when Cigna tapped him to help spot savings in its operation[.]"[18]

38.   "At Cigna, Muney and his team created a list of tests and procedures approved for use with certain illnesses.  The system would automatically turn down payment for a treatment that didn't match one of the conditions on the list.  Denials were then sent to medical directors, who would reject these claims with no review of the patient file."[19]

39.   This list was eventually called "PxDx" which is Cigna's shorthand for procedure-to-diagnosis.

40.   Given that this system has been in place for over a decade, millions of insureds claims have been automatically reviewed pursuant to PXDX and many have been wrongfully denied using this pernicious system.

---

[17]   Letter from House of Representatives Committee on Energy and Commerce to David Cortani, President and CEO of Cigna, (May 16, 2023), https://energycommerce.house.gov/posts/e-and-c-republicans-press-cigna-for-clarification-after-investigative-report-accuses-insurance-company-of-denying-claims-without-reading-them.

[18]   Rucker, *supra*, note 6.

[19]   *Id*.

### C.    Cigna Implemented PXDX to Increase Profits at Patients' Expense

41.    Cigna's implementation of the PXDX system to automatically review Medical Claims in mass without providing an actual and meaningful review served to benefit Cigna's financial bottom line.  In fact, in the words of PXDX's creator, the system has "undoubtedly saved billions of dollars" for Cigna.[20]

42.    Cigna's use of the PXDX system creates these substantial savings for Cigna in multiple ways.  Specifically, "[i]t allowed Cigna to begin turning down claims that it had once paid.  And it made it cheaper to turn down claims, because the company's doctors never had to open a file or conduct any in-depth review.  They simply denied the claims in bulk with an electronic signature."[21]

43.    Critically, by using the PXDX system, Cigna foregoes the substantial costs associated with paying doctors to conduct an actual meaningful review of insureds' Medical Claims.  In fact, when Medical Claims are reviewed properly, it costs a few hundred dollars an hour in labor for a medically licensed practitioner to review a submitted claim.  In stark contrast, as detailed above, Cigna's use of the PXDX algorithm shortens a doctor's claim review time to as little as 1.2 seconds.  Thus, by using PXDX Cigna has substantially reduced the labor costs associated with performing an actual and meaning review of insureds' Medical Claims as it is required to do by law and contract.  As such, Cigna should be ordered to disgorge these profits to remedy its unjust enrichment and the harm it caused to Plaintiffs and members of the Classes.

44.    In addition to the substantial labor cost savings Cigna reaps by using PXDX, Cigna also uses PXDX to arbitrarily batch mismatched diagnoses and test/procedures to eschew

---

[20]    *Id.*

[21]    *Id.*

meaningful oversight or meaningful secondary review of submitted medical claims. The PXDX algorithm's arbitrary batching results in the indiscriminate denial of Medical Claims that were previously paid by Cigna – and forces Cigna's insureds and/or those with Health Benefit Plans administered by Cigna to pay out of pocket for tests and procedures that their Health Benefit Plans should have covered.

45.     As a result, Cigna illegally profits by denying claims that it once paid (thereby saving Cigna money that it would have otherwise spent on medically necessary care) and cutting substantial labor costs otherwise spent on employing medically trained and licensed claims reviewers to perform an actual and meaningful review of Medical Claims.

46.     These substantial savings for Cigna come at the expense of Plaintiffs and members of the Classes who, among other things, overpay for insurance under Health Benefit Plans that they reasonably expect to provide them with an actual and meaningful claims review process that is eschewed by PXDX and/or who are forced to pay out of pocket for unexpected medical bills because of Cigna's wrongful denial of their claims using PXDX.

**D.     Plaintiffs and Members of the Classes Were Harmed by Cigna's Illegal Scheme**

47.     While Cigna illegally profiteers from using PXDX to automatically review Medical Claims instead of performing an actual and meaningful review and wrongfully denies thousands of Medical Claims per year, Cigna's insureds and individuals whose Health Benefit Plans are administered by Cigna overpay for their insurance, which is reasonably expected to provide an actual and meaningful claims review and administration process and/or must pay out of pocket for Medical Claims that are wrongfully denied through Cigna's use of PXDX.

48.     Cigna defines "medically necessary" as "Health care services or supplies needed to prevent, diagnose, or treat an illness, injury, condition, disease, or its symptoms, including habilitation, and that meet accepted standards of medicine."

49.     Plaintiff Snyder was and continues to be enrolled in a self-insured Health Benefit Plan administered by Defendant Cigna Health and Life.

50.     Plaintiff Snyder has had Medical Claims automatically reviewed through Cigna's PXDX algorithm instead of Cigna performing an actual and meaningful review of Medical Claims that Plaintiff Snyder submitted to her Health Benefit Plan.

51.     For example, in or around November 2021, Plaintiff Snyder was experiencing substantial pain in her pelvic region and sought medical care to determine the source of this extreme discomfort.  Eventually, Plaintiff Snyder's doctor diagnosed her as suffering from deep infiltrating endometriosis, which was advanced and spreading.

52.     On April 22, 2022, Plaintiff Snyder underwent a four and a half-hour medically necessary surgery to treat her endometriosis.  During the surgery, Plaintiff Snyder's doctor discovered that one of Plaintiff Snyder's fallopian tubes needed to be removed.  To accurately diagnose the issue with Plaintiff Snyder's fallopian tubes, Plaintiff Snyder's doctors ordered a test to determine whether she had Human Papillomavirus ("HPV").

53.     After the surgery, a claim for coverage of the HPV diagnostic test was submitted. On May 21, 2022, Defendant Cigna Health Management, Inc. sent Plaintiff Snyder a denial letter. The denial letter stated that Cigna would not cover the $299.16 charge because it was purportedly "not medically necessary."

54.     The bottom righthand corner of the denial letter that Plaintiff Snyder received from Defendant Cigna Health Management, Inc, indicates that the denial was determined by PXDX.

Moreover, the denial letter was signed by Paul Rossi, a long-time Cigna medical director who, as discussed above, in early 2022 alone denied tens of thousands of claims submitted by patients for coverage.

55.     Accordingly, upon information and belief, Defendants failed to have any doctor conduct an actual and meaningful review or a thorough, fair, and objective investigation into Plaintiff Snyder's Medical Claim for coverage of the test and instead, had Dr. Rossi rubber stamp this denial, alongside thousands of others based on Cigna's automated PXDX system.

56.     As a result of the Defendants' unlawful conduct, including use of the PXDX algorithm to automatically deny Medical Claims, Plaintiff Snyder was harmed, including, *inter alia*, by overpaying for health insurance under her Health Benefit Plan.

57.     Plaintiff Wingo has also had Medical Claims automatically reviewed through Cigna's PXDX algorithm instead of Defendants performing an actual and meaningful review of claims that Plaintiff Wingo submitted to his Health Benefit Plan.

58.     On or around March 31, 2023, Plaintiff Wingo's doctor ordered testing related to a primary diagnosis.  Plaintiff Wingo had the testing ordered by his doctor performed.  After this testing was performed, a Medical Claim for coverage of the testing was submitted.

59.     On May 31, 2023, Defendant Cigna Health Management, Inc. sent Plaintiff Wingo a denial letter.  The denial letter stated that Cigna would not cover the $241.84 charge for primary diagnosis testing because it was purportedly not "medically necessary."

60.     The bottom righthand corner of the denial letter that Plaintiff Wingo received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX.

61.     Further, on July 24, 2023, Plaintiff Wingo's dependent and Health Benefit Plan beneficiary ("Ms. Wingo") began experiencing flu-like symptoms.  To diagnosis this medical issue, Ms. Wingo's doctor ordered acute upper respiratory infection testing.

62.     Ms. Wingo had the acute upper respiratory infection testing ordered by her doctor performed.  After this testing was performed, a Medical Claim for coverage of the acute upper respiratory testing was submitted.

63.     On September 21, 2023, Defendant Cigna Health Management, Inc. sent Plaintiff Wingo a denial letter.  The denial letter stated that Cigna would not cover the $167.00 charge for acute upper respiratory infection testing because it was purportedly not "medically necessary."

64.     The bottom righthand corner of the denial letter that Plaintiff Wingo received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX.

65.     Accordingly, upon information and belief, Defendants failed to have any doctor conduct an actual and meaningful review or thorough, fair, and objective investigation into Plaintiff Wingo's Medical Claims for coverage and instead, had these Medical Claims denied, alongside hundreds of thousands of others, based on Cigna's automated PXDX process.

66.     As a result of the Defendants' unlawful conduct, including its use of the PXDX algorithm to automatically review claims, Plaintiff Wingo was left with an unexpected medical bill for a test that his dependent's doctor had ordered, which should have been subject to an actual and meaningful review and should have been covered under his Health Benefit Plan.

67.     Plaintiff Whitney has also had Medical Claims automatically reviewed through Cigna's PXDX algorithm instead of Defendants performing an actual and meaningful review of claims that Plaintiff Whitney submitted to her Health Benefit Plan.

68.    On or around August 31, 2023, Plaintiff Whitney's doctor performed a procedure on Plaintiff Whitney.  After the procedure was performed, a Medical Claim for coverage of the testing was submitted.

69.    On September 18, 2023, Defendant Cigna Health Management, Inc. sent Plaintiff Whitney two denial letters.

70.    The first denial letter dated September 18, 2023, stated that Cigna would not cover the $1,096.00 charge for the service because it was purportedly not "experimental, investigational or unproven for the diagnosis."

71.    The bottom righthand corner of the denial letter that Plaintiff Whitney received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX.

72.    The second denial letter, also dated September 18, 2023, stated that Cigna would not cover the $2,002.00 charge for the service because it was purportedly not "experimental, investigational or unproven for the diagnosis."

73.    The bottom righthand corners of both denial letters that Plaintiff Whitney received from Defendant Cigna Health Management, Inc. indicate that the denials were determined by PXDX.

74.    Accordingly, upon information and belief, Defendants failed to have any doctor conduct an actual and meaningful review or thorough, fair, and objective investigation into Plaintiff Whitney's Medical Claims for coverage and instead had these Medical Claims denied, alongside hundreds of thousands of others, based on Cigna's automated PXDX process.

75.    As a result of the Defendants' unlawful conduct, including its use of the PXDX algorithm to automatically review claims, Plaintiff Whitney was left with an unexpected medical

bill for a service his doctor performed, which should have been subject to an actual and meaningful review and should have been covered under her Health Benefit Plan.

76.     Upon information and belief, members of the Classes have been subject to the same lack of actual and meaningful review of their claims by Cigna and instead, have been subject to Cigna's use of PXDX to automatically review and deny Medical Claims, and Cigna's medical doctors' rubber stamping of denials.

77.     As a direct result of Defendants' unlawful conduct, Plaintiffs and members of the Classes have suffered and continue to suffer damages, including, *inter alia*, overpayment for their Health Benefit Plans and out of pocket costs.  Plaintiffs and members of the Classes should also be awarded injunctive relief, statutory and punitive damages, restitution, and disgorgement, among other remedies.

### E.     Cigna Is a Fiduciary and Party in Interest

78.     Plaintiffs Wingo and Whitney and the members of the ERISA Class are participants in employee welfare benefit plans as that term is defined in 29 U.S.C. §1002(1)(A), insured or administered by Defendants to provide participants with medical care.

79.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan."  ERISA §402(a)(1), 29 U.S.C. §1102(a)(1).

80.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under §402(a)(1), 29 U.S.C. §1102(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan,

or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).  This is a functional test.  Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

81.     In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA Plans and their participants.  The power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.  An appointing fiduciary must take prudent and reasonable action to determine whether the appointees are fulfilling their own separate fiduciary obligations.

82.   Cigna is a fiduciary of all of the ERISA Class members' Health Benefit Plans ("ERISA Health Benefit Plans") to which it provided health benefits or for which it administered such benefits in that it exercised discretionary authority or control respecting the following plan management activities, ERISA §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i), and in that it had discretionary authority or discretionary responsibility in the administration of the Plans of participants and beneficiaries in the ERISA Class, ERISA §3(21)(A)(iii), 29 U.S.C. §1002(21)(A)(iii).

83.     Moreover, the ERISA Health Benefit Plans expressly granted Cigna broad discretionary authority under the ERISA Health Benefit Plans, including the authority to determine benefit payments.

84.     In addition to its fiduciary status under the foregoing provisions, Cigna is a fiduciary of all of the ERISA Class members' ERISA Health Benefit Plans in that it exercised

authority or control respecting management or disposition of plan assets, ERISA §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i), because:

      (a)      The insurance policies, ASO agreements, and other contracts underpinning the ERISA Health Benefit Plans are "plan assets" within the meaning of ERISA;

      (b)      Through its conduct as described herein, Cigna exercised control over the contracts underpinning the ERISA Health Benefit Plans, successfully leveraged its relationships to the ERISA Class members' Plans to benefit itself, its affiliates, and third parties, and its authority or control over these significant plan assets enabled it to do so.

85.     In addition, any ERISA Health Benefit Plan-paid amounts that were contributed to participant healthcare services transactions were "plan assets" within the meaning of ERISA. Incident to its scheme, Cigna also exercised control over these plan assets, making it a fiduciary for purposes of these transactions.

86.     Cigna is also a fiduciary because it exercised discretion to set the prices that the ERISA Class members were, and are, required to pay for their healthcare services.  Cigna is required to act in the best interests of the ERISA Class, but by allowing participants and beneficiaries of ERISA Health Benefit Plans to be subject to the conduct described herein, Cigna has breached its fiduciary duties.

87.     Cigna is aware of the effect of this conduct alleged herein has had on the ERISA Class.  Nevertheless, Cigna has maximized its revenues at the expense of the ERISA Class by engaging in the unlawful conduct described herein.

88.     Furthermore, in negotiating and entering into a contract on behalf of an ERISA Health Benefit Plan, a fiduciary must act prudently and negotiate terms that are reasonable and in the best interests of plan participants.  In these negotiations and in the contract that is ultimately agreed upon, a fiduciary cannot place its interests over the interests of the plan participants and beneficiaries.

89.     Cigna is also a party in interest under ERISA because (a) it is a fiduciary, ERISA §3(14)(A), 29 U.S.C. §1002(14)(A); and/or (b) it provided insurance, plan administration, and healthcare management services to Plaintiffs Wingo and Whitney's and the ERISA Class members' ERISA Health Benefit Plans, ERISA §3(14)(B), 29 U.S.C. §1002(14)(B).

90.     As a party in interest, Cigna received direct and indirect compensation for services, some of which was in the form of excess amounts that was collected in exchange for few to no services.  Cigna also received and used for its own and its affiliates' benefits "plan assets," including patient cost-sharing and ERISA Health Benefit Plan contracts under which it had access to the ERISA Health Benefit Plans and were able to impose its PXDX program on the ERISA Class.

### F.     Cigna's ERISA Duties

91.     **The Statutory Requirements**.  ERISA imposes strict fiduciary duties upon plan fiduciaries.  ERISA §404(a), 29 U.S.C. §1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title] and [Title IV].

92.     **The Duty of Loyalty**. ERISA imposes on a plan fiduciary the duty of loyalty – that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ."  The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye

single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

93.     **The Duty of Prudence.**  Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence – that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

94.     **The Duty to Inform**.  The duties of loyalty and prudence include the duty to disclose and inform.  These duties entail: (a) a negative duty not to misinform; (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (c) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

95.     **Rights of Action Under the Plans for Fiduciary Breach and Related Claims.** ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), provides that a participant or beneficiary may bring an action to enforce rights under the terms of the plan or to clarify his or her  rights to future benefits under the terms of the plan.  Further, ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), authorizes individual participants and fiduciaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."   The remedies available pursuant to §502(a)(3) include remedies for breaches of the fiduciary duties set forth in ERISA §404, 29 U.S.C. §1104.  Further, ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), permits a plan participant, beneficiary, or fiduciary to bring a

23

suit for relief under ERISA §409.  ERISA §409, 29 U.S.C. §1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets.  ERISA §409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate. Plaintiffs Wingo and Whitney bring the ERISA claims pursuant to ERISA §502(a)(3) and §502(a)(1)(B), as further set forth below, because not all the remedies that Plaintiffs Wingo and Whitney seek are available under all sections of ERISA and, alternatively, Plaintiffs Wingo and Whitney are pleading the ERISA claims in the alternative.

### G.    Cigna Breached Its Duties

96.    Cigna breached the terms of the ERISA Health Benefit Plans and legal obligations, committed breaches of fiduciary duties, and was unjustly enriched in doing so thereby harming Plaintiffs Wingo and Whitney and ERISA Class members in the following ways:

(a)    improperly delegating its claims review function to the PXDX system, which uses an automated process to improperly deny claims;

(b)    improperly allowing its medical directors to sign off on the denials without individually reviewing each patient's file;

(c)    failing to have its medical directors conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials.

(d)    maximizing its own profits, profits to its affiliates, and profits to third parties, at the expense of the ERISA Class members; and

(e)    failing to monitor its appointees, formal delegates, and informal designees in the performance of their fiduciary duties.

97.     Plaintiffs Wingo and Whitney and ERISA Class members paid out of pocket for medically necessary healthcare services and/or could not receive medically necessary healthcare services that should have been covered under their ERISA Health Benefit Plans due to Cigna's improper review and denial of Medical Claims.

## V.     FRAUDULENT CONCEALMENT AND TOLLING OF STATUTES OF LIMITATIONS

98.     Plaintiffs repeat and incorporate all other paragraphs as if fully set forth herein.

99.     Plaintiffs and members of the Classes did not know and could not have known that Defendants were using PXDX to carry out a scheme to automatically review Medical Claims instead of performing an actual and meaningful review of Medical Claims and to illegally deny insureds actual and meaningful review of their Medical Claims and to deny coverage of Medical Claims.

100.    Defendants' knowing and active concealment of their fraudulent scheme and the misrepresentations and omissions alleged herein toll any applicable statute of limitations.  Through no fault of their own, and not for any lack of due diligence, Plaintiffs and members of the Classes were deceived regarding Defendants' claims review and administration process and could not reasonably discover Defendants' illegal scheme or Defendants' deception with respect to its use of PXDX to automatically review and deny Medical Claims.

101.    Defendants' illegal scheme depended on concealing from insureds their use of PXDX in medical claims review and determinations and to deny insureds actual and meaningful review of their claims.  Plaintiffs and members of the Classes could not have discovered the scheme alleged herein earlier in the exercise of reasonable diligence.

102.    Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a

fraudulent scheme and use PXDX to automatically review and deny Medical Claims, and to deny insureds actual and meaningful review of Medical Claims and to wrongfully deny Medical Claims for medically necessary procedures and testing.  As alleged herein, an actual and meaningful review of their Medical Claims for coverage was material to Plaintiffs and members of the Classes at all relevant times.  Within the time period of any applicable statute of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence the existence of Defendants' fraudulent scheme.

103.    At all times, Defendants were under a continuous duty to provide an actual and meaningful review of Plaintiffs and members of the Classes' Medical Claims and through their misrepresentations and/or omissions indicated that they were providing such a review.

104.    Defendants knowingly, actively, and affirmatively concealed the facts and underlying deceptive conduct alleged herein.  Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active, and affirmative concealment.  Plaintiffs could not have reasonably discovered Defendants' fraudulent scheme through due diligence.

105.    The earliest Plaintiffs could have reasonably become aware of the fraudulent scheme was March 25, 2023, when ProPublica publicly revealed Defendants' use of the PXDX system to automatically review and deny Medical Claims.

106.    Any applicable statutes of limitations have been tolled based on the discovery rule and Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiffs have been kept in ignorance of vital information essential to the pursuit of their claims, without any fault or lack of diligence on their part.  Plaintiffs could not reasonably have discovered the fraudulent nature of Defendants' conduct.  Accordingly, Defendants are estopped from relying on any statute of limitations to defeat any of Plaintiffs' claims.

## VI.     CLASS ACTION ALLEGATIONS

107.    Plaintiff Snyder brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Nationwide non-ERISA Class and Subclass.

> **Nationwide non-ERISA Class**: All persons who entered into an agreement to receive insurance coverage under a Health Benefit Plan in the United States that is not established or maintained under ERISA and had their Medical Claim denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system (the "Nationwide non-ERISA Class").

> **Virginia Subclass:** All persons who entered into an agreement to receive insurance coverage under a Health Benefit Plan in the Commonwealth of Virginia that is not established or maintained under ERISA and had their Medical Claims denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system (the "Virginia Subclass").

108.    Plaintiffs Wingo and Whitney bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following ERISA Class.

> **ERISA Class**: All persons who entered into an agreement to receive insurance coverage under a Health Benefit Plan in the United States that is established and maintained under ERISA and had their Medical Claims denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system (the "ERISA Class").

109.    Excluded from the Classes and Subclass are Defendants, their parents, subsidiaries, corporate affiliates, Defendants' officers or directors; the judicial officers to whom this case is assigned and any members of their staffs and immediate families; and any heirs, assigns, or successors of any of the persons or entities described in this paragraph above.

110.    Plaintiffs reserve the right to revise the definition of the Class and Subclasses based upon subsequently discovered information and reserve the right to establish additional subclasses where appropriate.  The Classes and Subclasses are collectively referred to herein as the "Classes."

111.    The Classes are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

112.    Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes.  The common and predominating questions of law and fact include, but are not limited to:

(a)    Whether Cigna engaged in the unlawful conduct alleged herein;

(b)    Whether through the acts and conduct alleged herein, Cigna violated its express and/or implied obligations to members of the Classes;

(c)    Whether Cigna's conduct alleged herein breached its contracts of insurance and/or contracts for claims administration to which Plaintiffs and members of the Classes were intended beneficiaries;

(d)    Whether Cigna misrepresented, concealed, and/or omitted information about its use of PXDX, causing Plaintiffs and other members of the Classes to, *inter alia*, overpay for their insurance;

(e)    Whether Cigna should be ordered to cease using the PXDX system to automatically review and deny Medical Claims;

(f)    Whether Cigna should be ordered to re-process all Medical Claims reviewed and denied using the PXDX system;

(g)    Whether as to the ERISA Class, Cigna is a fiduciary under ERISA;

(h)    Whether as to the ERISA Class, Cigna is a party in interest under ERISA;

(i)    Whether as to the ERISA Class, Cigna breached its fiduciary duties in failing to comply with ERISA as alleged;

(j)    Whether as to the ERISA Class, Cigna violated the Plans' terms by collecting unlawfully excessive amounts for healthcare services, and retaining the excess amounts;

(k)     Whether as to the Nationwide non-ERISA Class, Cigna breached its implied covenant of good faith and fair dealing to Plaintiffs and members of the Class;

(l)     Whether as to the non-ERISA Class, Cigna violated Virginia Code §59.1-196, *et seq*.; and

(m)     Whether, as a result of Cigna's misconduct as alleged herein, Plaintiffs and members of the Classes are entitled to damages, including compensatory, statutory, exemplary and/or punitive damages, restitution, disgorgement, and/or injunctive or declaratory relief.

113.    Plaintiffs' Medical Claims are typical of the Medical Claims of the Classes Plaintiffs seek to represent.  As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same unlawful actions and conduct by Defendants.

114.    Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all the obligations and duties material thereto.  Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

115.    Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes.  Plaintiffs will represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

116.    Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

117.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

118.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only

individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

119.    The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief and/or corresponding declaratory relief with respect to the Classes.

120.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VII.    CLAIMS FOR RELIEF

<u>**COUNT I**</u>
**DECLARATORY JUDGMENT**
**(On behalf of Plaintiff Snyder and the non-ERISA Classes**
**28 U.S.C. §2201)**

121.    Plaintiff Snyder incorporates by reference the preceding paragraphs as if they were fully set forth herein.

122.    Plaintiff Snyder brings this claim on behalf of herself and the non-ERISA Classes.

123.    Plaintiff Snyder and members of the non-ERISA Classes either entered into written insurance contracts with Cigna or with Health Benefit Plans that contracted with Cigna to provide claims administration services.  Plaintiff Snyder and members of the non-ERISA Classes were intended beneficiaries of any contract between Cigna and Health Benefit Plans to provide claims administration services.

124.    Plaintiff Snyder and the non-ERISA Classes submitted Medical Claims that were automatically reviewed and denied by Cigna through the PXDX system.

125.    An actual case or controversy exists regarding the rights of Plaintiff Snyder and members of the non-ERISA Classes and Defendants' obligations as an issuer of insurance and/or claims administrator for the Health Benefit Plans.

126.    It is necessary to resolve Plaintiff Snyder's rights and Defendants' obligations as an issuer of insurance and/or claims administrator for the Health Benefit Plans and to determine whether Plaintiff Snyder and members of the non-ERISA Classes have not received the insurance coverage and/or services they bargained for, including Medical Claims review and administration services, pursuant to the terms of insurance under the Health Benefit Plans.

127.    Under its insurance agreements and its claims administration agreements with Health Benefit Plans, Cigna agreed to properly review and administer Medical Claims submitted by Plaintiff Snyder and members of the non-ERISA Classes.  Accordingly, Plaintiff Snyder and members of the non-ERISA Classes are legally entitled to an actual and meaningful review of their Medical Claims.

128.    Rather than providing an actual and meaningful review of Medical Claims, Cigna used the PXDX system to automatically review and deny Medical Claims submitted by Plaintiff Snyder and members of the non-ERISA Classes.

129.    Pursuant to 28 U.S.C. §2201, Plaintiff Snyder and members of the non-ERISA Classes seek a declaratory judgment from this Court declaring that Cigna's conduct in using the PXDX system to automatically review and deny Medical Claims instead of performing an actual and meaningful review of Medical Claims did not comply with the terms of the insurance policies under the Health Benefit Plans and/or the claims administration agreements entered into by Cigna with the Health Benefit Plans.

130.    Plaintiff Snyder further requests, pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, that the Court order Cigna to cease using the PXDX system to automatically review and deny Medical Claims.

131.    Plaintiff Snyder further requests, pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, that the Court order Cigna to re-process all Medical Claims that were automatically reviewed and denied using the PXDX system.

**COUNT II**
**BREACH OF CONTRACT**
**(On behalf of Plaintiff Snyder and the Nationwide non-ERISA Class,**
**or alternatively, on behalf of the Virginia Subclass)**

132.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

133.    Plaintiff Snyder brings this claim on behalf of herself and the Nationwide non-ERISA Class, or alternatively, on behalf of herself and the Virginia Subclass.

134.    Cigna formed agreements and entered into contracts directly with insureds and/or with Health Benefit Plans, whereby it agreed to properly review and administer Medical Claims submitted by Plaintiff and members of the non-ERISA Class.  As Cigna's insureds and beneficiaries of Health Benefit Plans that have contracted with Cigna to administer Medical Claims, Plaintiff and members of the non-ERISA Class are Cigna's beneficiaries and intended beneficiaries to any contract Cigna entered into to provide claims administration services.

135.    At all times relevant herein, in exchange for Cigna providing insurance and/or claims administration services, Plaintiff Snyder and members of the non-ERISA Class, or their employers as part of a Class member's compensation package, paid Cigna and performed all obligations they have to Cigna under relevant contracts.

136.    Upon information and belief, each insurance policy and/or claims administration agreement included either expressly or impliedly, without limitation, Cigna's duty to (i) exercise its fiduciary duties to insureds, including Plaintiff Snyder and members of the non-ERISA Class; (ii) abide by applicable state and federal laws; (iii) adequately and meaningfully review Medical Claims; (iv) refrain from wrongfully denying Medical Claims without an actual and meaningful review; and (v) properly inform insureds prior to a claim denial.

137.    Cigna breached each insurance policy and claims administration agreement to which Plaintiff Snyder and non-ERISA Class members were intended beneficiaries by, without limitation, failing to (i) keep its promise to fulfill its obligation to exercise its fiduciary duties to insureds; (ii) abide by applicable state and federal laws; (iii) adequately and meaningfully review Medical Claims; and (iv) properly inform insureds prior to a claim denial and by automatically reviewing and wrongfully denying Medical Claims through the PXDX algorithm.  Plaintiff Snyder and members of the non-ERISA Class, either as individuals who directly contracted with Cigna or as intended beneficiaries of Cigna's contracts with Health Benefit Plans, have not received the benefit of their bargain and have experienced, inter alia, a loss in value of their insurance policies.

138.    Cigna's conduct in permitting medical necessity reviews to be performed automatically by the PXDX algorithm and in a manner that did not comply with the terms of the insurance policies and/or claims administration agreements also constitutes a breach of the policies and/or claims administration agreements.

139.    As a direct and proximate result of Cigna's breaches of contract, Plaintiff Snyder and members of the non-ERISA Class have suffered actual damages and should be awarded any and all damages available at law in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(On behalf of Plaintiff Synder and the Nationwide non-ERISA Class,
or alternatively, on behalf of the Virginia Subclass)**

140.     Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

141.     Plaintiff Synder brings this claim on behalf of herself and the Nationwide non-ERISA Class, or alternatively, on behalf of herself and the Virginia Subclass.

142.     Plaintiff Snyder and members of the non-ERISA Class either entered into written insurance contracts with Cigna or with Health Benefit Plans that contracted with Cigna to provide claims administration services.  Plaintiff Snyder and members of the non-ERISA Class were intended beneficiaries of any contract between Cigna and Health Benefit Plans to provide claims administration services.

143.     When Cigna issues insurance policies and/or enters into claims administration agreements, an implied covenant of good faith and fair dealing arises.  Cigna's duty of good faith and fair dealing obligated Cigna to consider Plaintiff Snyder's and members of the non-ERISA Class's interests at least equal to their own interests and to adopt reasonable standards for an actual and meaningful review and analysis of insureds' Medical Claims for coverage.

144.     Pursuant to those insurance contracts and/or claims administration agreements, in exchange for insureds' premium payments and/or payments for claims administration services, Cigna implied and covenanted that it would act in good faith and follow the law and the contracts with respect to an actual and meaningful and fair review of Plaintiff Snyder's and the non-ERISA Class's medical claims and the prompt and fair payment of those claims.

145.     Cigna has breached its duty of good faith and fair dealing by, among other things: (i) improperly delegating its Medical Claims review function to the PXDX algorithm, which uses an automated process to review and improperly deny Medical Claims; (ii) allowing their medical

directors to sign off on the PXDX denials in batches, without individually reviewing each patient's file and claim; and (iii) failing to have their medical directors conduct a thorough, fair, and objective review, analysis, and investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims and to avoid unfair denials.

146.    Cigna's practices as described herein violated their duties to Plaintiff Snyder and members of the non-ERISA Class under the insurance contracts and/or claims administration agreements of which Plaintiff Snyder and non-ERISA Class members were intended beneficiaries.

147.    Cigna's practices as described herein constitute an unreasonable denial of Plaintiff Snyder's and members of the non-ERISA Class's rights to a thorough, fair, and objective review, analysis, and investigation of each of their Medical Claims by a doctor and breach the implied covenant of good faith and fair dealing arising from Cigna's insurance contracts and/or claims administration agreements of which Plaintiff Snyder and members of the non-ERISA Class were intended beneficiaries.

148.    Cigna's practices as described herein further constitute an unreasonable denial to pay benefits due to Plaintiff Snyder and members of the non-ERISA Class in breach of the implied covenant of good faith and fair dealing arising from Cigna's insurance contracts and/or claims administration agreements of which Plaintiff Snyder and non-ERISA Class members were intended beneficiaries.

149.    As a result of Cigna's unlawful conduct, Plaintiff Snyder and members of the non-ERISA Class have not received the benefit of their bargain and have experienced actual damages in the form of payment for insurance and claims administration services not rendered and/or payment for medically necessary tests and/or procedures that would have been otherwise covered

by their Health Benefit Plans but for Cigna's conduct alleged herein, including its use of PXDX in Medical Claims reviews and denials.

150.    Cigna's wrongful denial of Plaintiff Snyder's and members of the non-ERISA Class's right to a thorough, fair, and objective review, analysis, and investigation of their Medical Claims and Cigna's wrongful automatic review and denial of Medical Claims damaged Plaintiff Snyder and members of the non-ERISA Class.  Plaintiff Snyder and the members of the non-ERISA Class have not received the benefit of their bargain and experienced a loss in value of their insurance policies.

151.    As a direct and proximate result of Cigna's breaches, Plaintiff Snyder and members of the non-ERISA Class have suffered, and will continue to suffer in the future, economic losses, including, but not limited to, denial of their benefit of their bargain, overpayment for their Health Benefit Plans, denial of the benefits owed under their Health Benefit Plans, out of pocket expenses for medical services that should have been covered under their Health Benefit Plans, and other general, incidental, and consequential damages, in amounts that will be determined at trial. Plaintiff Snyder and members of the non-ERISA Class also seek actual damages in an amount to be proven at trial.  Plaintiff Snyder and members of the non-ERISA Class also seek statutory and pre- and post- judgment interest against Cigna.

152.    Cigna's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, and therefore Plaintiff and members of the non-ERISA Class seek punitive damages against Cigna in an amount to be proven at trial.

153.    By reason of Cigna's conduct alleged herein, Plaintiff Snyder has necessarily retained attorneys to prosecute the present action.  Plaintiff Snyder therefore seeks reasonable

attorneys' fees and litigation expenses, including expert witness fees and costs incurred in bringing this action on behalf of herself and the non-ERISA Class.

**COUNT IV**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(On behalf of Plaintiff Snyder and the Nationwide non-ERISA Class,**
**or alternatively, on behalf of the Virginia Subclass)**

154.    Plaintiff Synder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

155.    Plaintiff Snyder brings this claim on behalf of herself and the Nationwide non-ERISA Class, or alternatively, on behalf of herself and the Virginia Subclass.

156.    Plaintiff Snyder and members of the non-ERISA Class entered into written contracts whereby Health Benefit Plans administered by Cigna were required to perform an actual and meaningful review of claims submitted and pay for Plaintiff's and members of the non-ERISA Class's medically necessary services rendered by healthcare providers.

157.    Cigna was aware of the fact that Plaintiff Snyder and members of the non-ERISA Class had entered into these contractual relationships, under which Health Benefit Plans were required to perform an actual and meaningful review of claims submitted and authorize payments for medically necessary services rendered by healthcare providers to Plaintiff Snyder and members of the Class.

158.    Cigna knew and understood that Plaintiff Snyder and members of the non-ERISA Class, by enrolling in Health Benefit Plans administered by Cigna had the reasonable expectation that their claims would be subject to an actual and meaningful review and that medically necessary expenses would be covered by the Health Benefit Plans.

159.    By engaging in its scheme to automatically review claims through the use of PXDX, instead of employing an actual and meaningful review process, and by automatically and

systemically reviewing and denying Plaintiff Snyder's and members of the non-ERISA Class's claims by using PXDX, Cigna intentionally disrupted and interfered with the performance of Plaintiff Snyder and members of the non-ERISA Class's contracts with their Health Benefit Plans.

160.    Cigna knew this disruption and interference with the performance of Plaintiff Snyder's and members of the non-ERISA Class's contracts was certain or substantially certain to occur when it engaged in a scheme to automatically review claims through the use of PXDX, instead of employing an actual and meaningful review process, and when it automatically and systemically reviewed and denied Plaintiff Snyder and members of the non-ERISA Class's claims by using PXDX, and deemed services not medically necessary, without any basis.

161.    As a direct and proximate result of Cigna's scheme to automatically review claims through the use of PXDX, instead of employing an actual and meaningful review process, and its automatic and systemic review and denial of Plaintiff Snyder and members of the non-ERISA Class's claims by using PXDX, and the resulting interference with the contracts between Plaintiff Snyder and members of the non-ERISA Class and their Health Benefit Plans, Plaintiff Snyder and members of the non-ERISA Class were damaged.

162.    Had Cigna disclosed that it does not provide an actual and meaningful analysis of claims and instead, automatically reviews and denies claims by using PXDX, Plaintiff Snyder and the members of the non-ERISA Class would not have contracted for insurance under their Health Benefit Plans or would not have paid as much for those benefits.

### COUNT V
### UNJUST ENRICHMENT
**(On behalf of Plaintiff Snyder and the Nationwide non-ERISA Class,**
**or alternatively, on behalf of the Virginia Subclass)**

163.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

164.    Plaintiff Snyder brings this claim on behalf of herself and the Nationwide non-ERISA Class, or alternatively, on behalf of herself and the Virginia Subclass.

165.    By delegating the claims review process to the automated PXDX system, Cigna wrongfully and consciously received ill-gotten profits in the form of monies saved by failing to deliver a legally entitled and promised review of Plaintiff Snyder's and members of the non-ERISA Class's medical claims, as well as received ill-gotten profits in the form of monies saved by denying Plaintiff Snyder's and members of the non-ERISA Class's otherwise meritorious medical claims. This was done in a manner that was unfair, unconscionable, and oppressive.

166.    Cigna knowingly received and retained these ill-gotten profits from Plaintiff Snyder and members of the non-ERISA Class.  In so doing, Cigna acted with conscious disregard for the rights of Plaintiff Snyder and members of the Class.

167.    As a result of Cigna's wrongful conduct as alleged herein, Cigna has been unjustly enriched at the expense of, and to the detriment of, Plaintiff Snyder and members of the non-ERISA Class.

168.    Cigna's unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein.

169.    Under the common law doctrine of unjust enrichment, it is inequitable for Cigna to be permitted to retain the benefits they received (without justification) by automatically reviewing and denying Plaintiff Snyder's and members of the non-ERISA Class's claims in an unfair, unconscionable, and oppressive manner.  Cigna's retention of savings attributable to its conduct under such circumstances makes it inequitable for Cigna to retain the resulting ill-gotten profits and constitutes unjust enrichment.

170.    The financial benefits derived by Cigna rightfully belong to Plaintiff Snyder and members of the non-ERISA Class.  Cigna should be compelled to disgorge, in a common fund for the benefit of Plaintiff Snyder and members of the non-ERISA Class, all of Cigna's ill-gotten profits attributable to its savings from the conduct alleged herein.

**COUNT VI**
**VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT ("VCPA")**
**(Va. Code §59.1-196, *et seq*.)**
**(On behalf of Plaintiff Snyder and the Virginia Subclass)**

171.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

172.    Plaintiff Snyder brings this claim on behalf of herself and the members of the Virginia Subclass.

173.    Plaintiff Snyder, members of the Virginia Subclass, and Defendants are "persons" as defined by Va. Code Ann. §59.1-198.

174.    The claims administration services offered by Cigna to Plaintiff Snyder and members of the Virginia Subclass were for personal, family or household purposes and are "consumer transaction[s]" as defined by Va. Code Ann. §59.1-198.

175.    The claims administration services are "goods" as defined by Va. Code Ann. §59.1-198.

176.    Defendants violated the VCPA, Va. Code Ann. §59.1-200(A), by *inter alia*: (1) "[m]isrepresenting that the [claims administration services] have certain quantities, characteristics, ingredients, uses, or benefits;" (2) "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model;" (3) "[a]dvertising goods or services with intent not to sell them as advertised;" and (4) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

177.    In the course of its business, Cigna misrepresented its insurance and claims administration services and willfully failed to disclose and actively concealed the fact that it does not provide an actual and meaningful analysis of claims submitted by patients under Health Benefit Plans and instead, automatically reviews and denies claims pursuant to the PXDX algorithm, Cigna also engaged in activities with a tendency or capacity to deceive as alleged herein.  Cigna further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission by misrepresenting its insurance and claims administration services and omitting and concealing that instead of reviewing claims, it employs the PXDX algorithm to automatically review and deny claims under Health Benefit Plans.

178.    In violation of the VCPA, Cigna employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of insurance policies and/or claims administration services.  Cigna knowingly concealed, suppressed, and/or omitted material facts regarding their insurance policies and/or claims administration services, which directly caused harm to Plaintiff Snyder and the Virginia Subclass.

179.    Cigna's unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Snyder and members of the Virginia Subclass had no reasonable way to know that Cigna was not providing an actual and meaningful analysis of their claims for coverage of medical tests and procedures and instead, was employing and continues to employ the PXDX algorithm to automatically review and deny claims under Health Benefit Plans.

180.    Cigna possessed superior knowledge as to the quality and characteristics of its claims review process and its use of PXDX.  Any reasonable consumer would have relied on Cigna's misrepresentations, concealment, and/or omissions, as Plaintiff Snyder and members of the Virginia Subclass did.

181.    Cigna intentionally and knowingly misrepresented, concealed, and/or omitted material facts regarding their claims review process and use of PXDX.

182.    Cigna's unfair and deceptive acts or practices and/or material misrepresentations and/or omissions regarding their claims review process and use of PXDX were intended to mislead consumers and misled Plaintiff Snyder and Virginia Subclass members.

183.    At all relevant times, Cigna's unfair and deceptive acts or practices, and/or misrepresentations and/or omissions regarding their claims review process and use of PXDX were material to Plaintiff Snyder and Virginia Subclass members.

184.    When Plaintiff Snyder and Virginia Subclass members obtained insurance through Health Benefit Plans, they reasonably relied on the reasonable expectation that Cigna would provide a proper review of their claims and would not automatically review and deny claims based on use of an algorithm, like PXDX.  Had Cigna disclosed that it does not provide an actual and meaningful analysis of claims and instead, automatically reviews and denies claims by using PXDX, Plaintiff Snyder and members of the Virginia Subclass would not have contracted for insurance under their Health Benefit Plans or would not have paid as much for those benefits.

185.    Moreover, Cigna has engaged in unfair insurance trade practices by, "[r]efusing arbitrarily and unreasonably to pay claims." Va. Code Ann. §38.2-510.

186.    Cigna has further regularly been engaged in unfair insurance trade practices pursuant to Va. Code Ann. §38.2-100 by, inter alia: (i) misrepresenting "the benefits, advantages,

conditions or terms of any insurance policy" in violation of Va. Code Ann. §38.2-502; (ii) "knowingly mak[ing], publish[ing], disseminat[ing], circulat[ing], or plac[ing] before the public, or caus[ing] or knowingly allow[ing], directly or indirectly, to be made, published, disseminated, circulated, or placed before the public in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement relating to (i) the business of insurance. . . which is untrue, deceptive or misleading" in violation of Va. Code Ann. §38.2-503; and (iii) mak[ing] or caus[ing] or allow[ing] to be made false or fraudulent statements or representations on or relative to an application or any document or communication relating to the business of insurance for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, premium finance company, or individual" in violation of Va. Code Ann. §38.2-512.

187.    Cigna's unfair and deceptive acts or practices and/or material misrepresentations and/or omissions regarding its claims, insurance coverage and services, including its claims review process and use of PXDX, are substantially injurious to consumers.  As a result of Cigna's deceptive acts and practices and knowing, intentional misrepresentations, concealment and/or omission of the fact that it does not provide an actual and meaningful review of claims and instead automatically reviews and denies claims by using PXDX, in violation of the VCPA, Plaintiff Snyder and members of the Virginia Subclass have suffered harm and continue to suffer harm.

188.    Cigna has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Cigna's deceptive acts or practices occurred in the conduct of trade or commerce.  Cigna knew or should have known that its unlawful conduct violated the VCPA.

189.    Cigna's unlawful acts and practices affect the public interest, and trade and commerce in the Commonwealth of Virginia.

190.    As a direct and proximate result of Cigna's violations of the VCPA, Plaintiff Snyder and members of the Virginia Subclass have suffered actual damages and/or injury in fact.

191.    Plaintiff Snyder and members of the Virginia Subclass seek actual damages against Defendants in an amount to be determined at trial and/or statutory damages pursuant to the VCPA based on Cigna's wanton and willful conduct, as well as costs, attorneys' fees, restitution, disgorgement of funds, and any other just and proper relief available under the VCPA.  *See* Va. Code §59.1-204.

## COUNT VII
## CLAIM FOR VIOLATION OF FIDUCIARY OBLIGATIONS
### (On Behalf of Plaintiffs Wingo and Whitney and the ERISA Class
### 29 U.S.C. §1132(a)(1)(B))

192.    Plaintiffs Wingo and Whitney hereby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

193.    This count is brought pursuant to 29 U.S.C. §1132(a)(1)(B).

194.    As the entity responsible for making insurance coverage and benefit determinations under Plaintiffs Wingo and Whitney's and ERISA Class members' Health Benefit Plans, and for developing internal practices and policies to facilitate such determinations, Cigna is an ERISA fiduciary.

195.    As an ERISA fiduciary, and pursuant to 29 U.S.C. §1104(a), Cigna is required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan.  It must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the ERISA Health Benefit Plan it administers.

Cigna must conform its conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insureds.

196.    Cigna breached the terms of the ERISA Health Benefit Plans and legal obligations, committed breaches of fiduciary duties, and was unjustly enriched in doing so thereby harming Plaintiffs Wingo and Whitney and ERISA Class members in the following ways:

      (a)    improperly delegating its claims review function to the PXDX system, which uses an automated process to improperly deny claims;

      (b)    improperly allowing its medical directors to sign off on the denials without individually reviewing each patient's file;

      (c)    failing to have its medical directors conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials.

      (d)    maximizing its own profits, profits to its affiliates, and profits to third parties, at the expense of the ERISA Class members; and

      (e)    failing to monitor its appointees, formal delegates, and informal designees in the performance of their fiduciary duties.

197.    Cigna violated its duty by failing to act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." It did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity.  It did not act in accordance with the terms of Plaintiffs Wingo and Whitney's and the ERISA Class's Health Benefit Plans.  Instead, Cigna elevated its own interests and those of its corporate affiliates above the interests of plan participants and beneficiaries.  By implementing a deficient claim review standard and process, Cigna artificially decreased the number and value of covered claims thereby benefiting its corporate affiliates at the expense of insureds.

198.     Cigna's breach of fiduciary duty is underscored by the fact that it also ignored state laws requiring it to apply generally accepted standards of care when making medical necessity determinations.

199.     Plaintiffs Wingo and Whitney and the members of the ERISA Class have been harmed by Defendant's breach of fiduciary duty because its claims have been subjected to Cigna's PXDX algorithm, making it less likely that Cigna will determine that their claims are covered.

200.     Plaintiffs Wingo and Whitney and the members of the ERISA Class seek an order enjoining Cigna's conduct alleged herein, attorneys' fees, and other just and proper relief available under 29 U.S.C. §1132 (a)(1)(B).

**COUNT VIII**
**CLAIM FOR IMPROPER DENIAL OF BENEFITS**
**(On Behalf of Plaintiffs Wingo and Whitney and the ERISA Class**
**29 U.S.C. §1132(a)(1)(B))**

201.     Plaintiffs Wingo and Whitney incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

202.     This count is brought pursuant to 29 U.S.C. §1132(a)(1)(B).

203.     Cigna denied the insurance claims for medically necessary treatment submitted by Plaintiffs Wingo and Whitney and other members of the Nationwide ERISA Class in violation of the terms of Plaintiffs Wingo and Whitney's Health Benefit Plan and the Health Benefit Plans that insure members of the Nationwide ERISA Class.  Cigna denied these claims, based on Cigna's PXDX algorithm, in violation of their fiduciary duty.  Cigna also denied these claims, in part, based on its systematic practice of: (i) automatic claim denial; (ii) claim processing quota or standards; and (iii) relying upon its deficient process even though the standards used are not a recognized basis for denying claims under Plaintiffs Wingo and Whitney's and the ERISA Class Health Benefit Plans.

46

204. Plaintiffs Wingo and Whitney and the members of the ERISA Class have been harmed by Cigna's improper benefit denials because they were deprived of insurance benefits that they were owed.

205. Plaintiffs Wingo and Whitney and the members of the ERISA Class seek an order enjoining Cigna's conduct as alleged herein, attorney's fees, and any other just and proper relief available under 29 U.S.C. §1132(a)(1)(B).

## COUNT IX
### CLAIM FOR EQUITABLE RELIEF
**(On Behalf of Plaintiffs Wingo and Whitney and the ERISA Class**
**29 U.S.C. §1132(a)(3)(A))**

206. Plaintiffs Wingo and Whitney incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

207. This Count is brought pursuant to 29 U.S.C. §1132(a)(3)(A).

208. Plaintiffs Wingo and Whitney and the ERISA Class have been harmed, and are likely to be harmed in the future, by Cigna's breach of fiduciary duty.

209. In order to remedy these harms, Plaintiffs Wingo and Whitney and the ERISA Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. §1132(a)(3)(A).

## COUNT X
### CLAIM FOR OTHER APPROPRIATE EQUITABLE RELIEF
**(On Behalf of Plaintiffs Wingo and Whitney and the ERISA Class**
**29 U.S.C. §1132(a)(3)(B))**

210. Plaintiffs Wingo and Whitney incorporate by reference the preceding paragraphs as though such paragraphs were fully stated herein.

211. This Count is brought pursuant to 29 U.S.C. §1132(a)(3)(B).

212. Plaintiffs Wingo and Whitney and the ERISA Class have been harmed, and are likely to be harmed in the future, by Cigna's breach of fiduciary duties.

213.    Additionally, by engaging in this misconduct, Cigna allowed itself to be unjustly enriched insofar as they were not required to pay benefit claims.

214.    In order to remedy these harms, Plaintiffs Wingo and Whitney and the ERISA Class are entitled to appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B).

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, respectfully demand judgment in their favor against Defendants as follows:

A.    Certifying this action as a class action;

B.    Appointing Plaintiffs as Class Representatives for the Classes;

C.    Appointing undersigned counsel as Class Counsel for the Classes;

D.    Issuing a permanent injunction ordering Cigna to stop utilizing the PXDX algorithm complained of herein, and instead to adopt or develop a medical claims review process that is consistent with those that are generally accepted and in compliance with the requirements of applicable state law;

E.    Declaration that Cigna's denials of coverage were improper and developed in violation of state law, including Defendants' fiduciary duties;

F.    Order Cigna to reprocess claims for coverage that it previously denied (in whole or in part) pursuant to a new process that is consistent with those that are generally accepted and in compliance with the requirements of applicable state and federal law.

G.    Order Cigna to faithfully apply its medical claims review process (including any new processes Cigna may adopt or promulgate in response to the relief sought herein) in reprocessing claims for coverage that it previously denied (in whole or in part), and in processing future claims for coverage;

H.    Order enjoining Cigna from continuing their unlawful conduct;

I.       Finding that Cigna is a fiduciary and/or a party in interest as defined by ERISA;

J.       Finding that Cigna violated its fiduciary duties of loyalty and prudence to Class members and awarding Plaintiffs Wingo and Whitney and the ERISA Class such relief as the Court deems proper;

K.       Finding that Cigna denied Plaintiffs and the Classes benefits and their rights under the policies and awarding such relief as the Court deems proper;

L.       Enjoining Cigna from further such violations;

M.       Award of surcharge to Plaintiffs Wingo and Whitney and members of the ERISA Class in an amount equivalent to the revenue it generated from its corporate affiliates or the plans with respect to claims filed by Plaintiffs Wingo and Whitney and members of the ERISA Class, expenses that Defendants' corporate affiliates saved due to Defendants' wrongful denials, the out-of-pocket costs for covered treatment that Plaintiffs Wingo and Whitney and members of the ERISA Class incurred following Cigna's wrongful denials, and/or pre-judgment and post-judgment interest;

N.       Award all damages to which Plaintiff Snyder and members of the non-ERISA Class are entitled;

O.       Award of disbursements and expenses for this action, including reasonable counsel fees, in amounts to be determined by the Court, pursuant to 29 U.S.C. §1132(g);

P.       Award of statutory penalties to the extent available;

Q.       Award of punitive damages to the extent available;

R.       Granting such other and further relief as this Court may deem just, equitable, or proper.

## VIII.   JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

Dated: November 2, 2023

Respectfully submitted

/s/Joseph P. Guglielmo
Joseph P. Guglielmo (CT 27481)
Amanda M. Rolon*
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
Erin Green Comite (CT 24886)
Anja Rusi (CT 30686)
156 South Main Street
P.O. Box 192
Colchester, Connecticut 06415
Tel. (860) 537-5537
ecomite@scott-scott.com
arusi@scott-scott.com

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer*
jmeltzer@ktmc.com
Melissa L. Yeates*
myeates@ktmc.com
Tyler S. Graden*
tgraden@ktmc.com
Jordan E. Jacobson *
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi*
Michael A. Innes*
Jordan M. Steele*

5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com
jsteele@carellabyrne.com

**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
Zachary S. Bower*
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Tel.: (973) 994-1700
zbower@carellabyrne.com

*Counsel for Plaintiffs and the Proposed
Classes*

*\*Pro hac vice* forthcoming