## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMY SNYDER, JAMES WINGO, STACI FOSTER WHITNEY, and SCOTT SCHULTZ, on behalf of themselves and all others similarly situated, | Civil Action No. 3:23-cv-01451-OAW |
| | Class Action |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| THE CIGNA GROUP, CIGNA HEALTH AND LIFE INSURANCE CO., and CIGNA HEALTH MANAGEMENT, INC., | |
| Defendants. | Dated: February 6, 2024 |

## FIRST AMENDED COMPLAINT

Plaintiffs Amy Snyder, James Wingo, Staci Foster Whitney, and Scott Schultz ("Plaintiffs") bring this proposed class action against the Cigna Group, Cigna Health and Life Insurance Company, and Cigna Health Management, Inc. (collectively, "Cigna" or "Defendants"), individually and on behalf of all others similarly situated, upon personal knowledge as to Plaintiffs' own conduct, based on investigation of counsel, and on information and belief as to all other matters.[1]

## I.      NATURE OF THE ACTION

1.      While Americans face ever increasing healthcare costs, Cigna has engaged in a pervasive practice of systematically denying Medical Claims[2] *en masse*.  In so doing, Cigna failed to establish and maintain reasonable claims procedures for beneficiaries of its services, as is required under the law and their insurance contracts.

2.      To perpetrate this illegal scheme, Cigna uses an automatic claims denial system known as Procedure-to-Diagnosis ("PXDX").

3.      Cigna uses this automatic claims denial system to cut costs associated with performing a reasonable review of Medical Claims and to unduly inhibit or hamper the processing of valid claims under the Health Benefit Plans of Plaintiffs and the Classes (defined below).[3]

4.      Thus, Plaintiffs and the Classes are wrongfully denied the reasonable claims determination procedure to which they are entitled under the law and their insurance contracts, and they are often left without coverage and/or with unexpected bills.

---

[1]      Counsel's investigation includes an analysis of publicly available information.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

[2]      As used herein, "Medical Claims" or "claims" includes claims for insurance coverage of medical goods, services, tests, treatments, procedures, and/or prescription drugs.

[3]      As used herein, "Health Benefit Plan" includes self-insured health benefit plans, multi-employer health benefit plans, other employer-sponsored health benefit plans, and/or insurance plans offered directly by Cigna.

5.      Indeed, it has been reported that in only two months in 2022, Cigna automatically denied over 300,000 medical claims using PXDX, spending an average of just 1.2 seconds purportedly "reviewing" each claim.

6.      Cigna performed a business impact assessment and cost-benefit analysis on adding tests to PXDX before it even developed the medical coverage policies supporting its decision.  In a 2014 internal document titled "Operating effectiveness: Portfolio Management Business Impact Assessment," Cigna forecasted that adding a particular test to the PXDX automatic claims denial system would lead to the rejection of more than 17,800 claims a year that it had once covered – saving roughly $2.4 million a year.[4]

7.      And, despite euphemistically predicting that denying medical coverage for a medical test ordered by a physician would "create a negative customer experience" – *i.e.*, prevent a patient from receiving medical care and further result in "out of pocket costs" for patients – Cigna still added the test to the list.

8.      In the words of U.S. Senator Richard Blumenthal, the "denials [that programs like PXDX] generate are too systematic to ignore."[5]

9.      By automatically denying claims, Cigna unlawfully profits by saving the labor costs associated with a reasonable claims determination procedure, and by denying Medical Claims that Cigna was obligated to cover.

10.      Plaintiffs and members of the Classes had their claims automatically denied by Cigna using the PXDX system.  Cigna denied Plaintiffs and members of the Classes a reasonable

---

[4]      *See* Exhibit A, David Finley, Dr. Julie Kessel, Robb Coutinho, *Operating effectiveness: Portfolio Management Business Impact Assessment*, CIGNA (2013).

[5]      *Examining Health Care Denials and Delays in Medicare Advantage*, 118 Cong. 2 (2023) (Opening Statement of Richard Blumenthal, Chairman, U.S. Sen. Permanent Subcommittee on Investigations Homeland Security and Governmental Affairs Committee), https://www.hsgac.senate.gov/wp-content/uploads/2023-05-17-Chair-Blumenthal-Opening-Statement.pdf.

claims determination procedure required by law and contract, inhibited the processing of Plaintiffs' and Class members' claims, and caused some Plaintiffs and members of the Classes to pay for Medical Claims that otherwise should have been covered under their Health Benefit Plans and to expend time and resources to appeal claims that were automatically denied without any physician review.

11.     Cigna has, among other things, violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, and regulations promulgated thereunder, breached the terms of its insurance contract with insureds and/or the terms of its claims administration contracts, of which Plaintiffs and members of the Classes were intended beneficiaries, breached its fiduciary duties, was unjustly enriched, and committed unfair and deceptive acts and practices.  Through this misconduct, Cigna (1) has violated state common law and statutes with respect to Plaintiff Snyder and other similarly situated class members who receive insurance coverage under a Health Benefit Plan that is not established or maintained under ERISA (the "Non-ERISA Class"); and (2) has violated ERISA with respect to Plaintiffs Wingo, Whitney, and Schultz, and other similarly situated class members who receive insurance coverage under a Health Benefit Plan that is established or maintained under ERISA (the "ERISA Class").

12.     In the course of conducting its business, Cigna misrepresented its insurance and claims administration services and willfully failed to disclose, and actively concealed, the fact that it does not provide a reasonable claims determination procedure and instead automatically denies claims pursuant to the PXDX automatic system.  Cigna also misrepresented its insurance and claims administration services while omitting and concealing that it employs the PXDX automatic claims denial system to deny claims without a reasonable review by a licensed professional.

13.     Plaintiffs, on behalf of themselves and the putative Classes, seek to remedy Cigna's unlawful conduct and illegal profiteering and to recover all compensatory damages, punitive damages, injunctive relief, equitable relief, and all other relief as permissible by law or equity.

## II.    PARTIES

14.     Plaintiff Amy Snyder resides in Washington, D.C., and is employed by Arlington Public Schools in Arlington, Virginia.  Plaintiff Snyder is enrolled in a Health Benefit Plan issued by Arlington Public Schools, which entered into an agreement with Cigna to have claims administered by Defendant Cigna Health and Life Insurance Co.  Since her enrollment, Plaintiff Snyder has received all of her healthcare services in Washington, D.C.  While enrolled in a Health Benefit Plan administered by Cigna Health and Life Insurance Co., Plaintiff Snyder received a denial letter issued by Defendant Cigna Health Management, Inc. denying a claim pursuant to the PXDX automatic claims denial system.  The PXDX denial letter received by Plaintiff Snyder was signed by Cigna employee Paul Rossi DO, Medical Director.  It further informed Plaintiff Snyder that $299.16 in charges for testing would not be paid by her Health Benefit Plan.

15.     Plaintiff James Wingo resides in Boerne, Texas, and is employed by the W.R. Berkley Corporation in San Antonio, Texas.  Plaintiff Wingo is enrolled in a Health Benefit Plan issued by W.R. Berkley, which entered into an agreement with Cigna to have claims administered by Defendant Cigna Health and Life Insurance Co.  While enrolled in a Health Benefit Plan administered by Defendant Cigna Health and Life Insurance Co., Plaintiff Wingo received at least two denial letters issued by Defendant Cigna Health Management, Inc. denying claims pursuant to the PXDX automatic claims denial system.  The PXDX denial letter, dated May 31, 2023, that Plaintiff Wingo received was signed by Cigna employee, Melvin Watson, MD, Medical Director, and informed Plaintiff Wingo that $241.84 in charges for treatment would not be paid by his Health Benefit Plan.  Another PXDX denial letter, dated September 21, 2023, that Plaintiff Wingo

received was signed by "Cigna Healthcare" and informed Plaintiff Wingo that $167.00 in charges for treatment to his dependent would not be paid by his Health Benefit Plan.

16.     Plaintiff Staci Foster Whitney resides in Maurepas, Louisiana.  Her spouse, Ashly M. Whitney, is employed by Waste Management.  Plaintiff Whitney is enrolled as a beneficiary in a Health Benefit Plan issued by Waste Management, which entered into an agreement with Cigna to have claims administered by Defendant Cigna Health and Life Insurance Co.  While enrolled in a Health Benefit Plan administered by Cigna Health and Life Insurance Co., Plaintiff Whitney received at least two denial letters issued by Defendant Cigna Health Management, Inc. denying a claim pursuant to the PXDX automatic claims denial system.  The PXDX denial letters received by Plaintiff Whitney were signed "Cigna Healthcare."  The letters further informed Plaintiff Whitney that $1,096.00 and $2,002.00 in charges for the service would not be paid by her Health Benefit Plan.

17.     Plaintiff Scott Schultz resides in Highland Park, Illinois.  Plaintiff Schultz was enrolled in a Health Benefit Plan issued by CapGemini, which entered into an agreement with Cigna to have claims administered by Defendant Cigna Health and Life Insurance Co.  While enrolled in a Health Benefit Plan administered by Cigna Health and Life Insurance Co., Plaintiff Schultz received a denial letter issued by Defendant Cigna Health Management, Inc. denying a claim pursuant to the PXDX automatic claims denial system.  The PXDX denial letter received by Plaintiff Schultz was signed by Cigna employee, Cheryl Dopke DO, Medical Director.  It further informed Plaintiff Schultz that $182.00 in charges for the testing would not be paid by his Health Benefit Plan.

18.     Defendant the Cigna Group is a Delaware corporation with a principal place of business in Bloomfield, Connecticut.  The Cigna Group is a for-profit American multi-national

managed healthcare and insurance company.  Prior to February 23, 2023, the Cigna Group was known as the Cigna Corporation.

19.     Defendant Cigna Health and Life Insurance Co. ("Cigna Health and Life") is a Connecticut corporation with its principal place of business in Bloomfield, Connecticut.  Cigna Health and Life is a subsidiary of Defendant the Cigna Group.

20.     Defendant Cigna Health Management, Inc. is a Delaware corporation with a principal place of business in Philadelphia, Pennsylvania.  Upon information and belief, Defendant Cigna Health Management, Inc. is a subsidiary of Defendant the Cigna Group.

## III.    JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332(d)(2).  This is a class action in which there is a diversity of citizenship between at least one member of the Classes and one Defendant; the proposed Classes each exceed one hundred members; and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

22.     This Court also has subject matter jurisdiction over this action pursuant to (a) 28 U.S.C. §1331, which provides for federal jurisdiction over civil actions arising under the laws of the United States, including ERISA; and (b) 29 U.S.C. §1132(e)(1) providing for federal jurisdiction of actions brought under Title I of ERISA, as certain members of the Classes are governed by ERISA.

23.     This Court also has supplemental jurisdiction over Non-ERISA state law claims pursuant to 23 U.S.C. §1367.

24.     This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Connecticut; Defendants are authorized to do business in the State of Connecticut; Defendants conduct business in the State

of Connecticut and this District; Defendant the Cigna Group, which Defendant Cigna Health Management, Inc. is a subsidiary of, and Defendant Cigna Health and Life Insurance, Co. have principal executive offices and Defendants provide insurance products and services in the State of Connecticut and this District.  Defendants intentionally avail themselves of the markets in this State through the promotion, marketing, and operations of their insurance services and platforms at issue in this lawsuit in Connecticut, and by retaining the profits and proceeds from these activities, to render the exercise of jurisdiction by this Court permissible under Connecticut law.

25.     Venue is proper in this District pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because Defendants reside or may be found in this District and some or all of the fiduciary breaches or other violations for which relief is sought occurred in or originated in this District.  Venue is proper in this District under 28 U.S.C. §1391(b) and (c)(2), because Defendant the Cigna Group, which Defendant Cigna Health Management, Inc. is a subsidiary of, and Defendant Cigna Health and Life are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Defendants have caused harm to members of the Classes residing in this District and Defendants regularly conduct business in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Cigna Offers and Administers Health Benefit Plans

26.     Cigna offers or administers Health Benefit Plans that pay all or a portion of "covered expenses," which are expenses incurred by a person while covered under a plan for the charges for services or supplies that are medically necessary, ***as determined by Cigna***.  Thus, Cigna has the discretion, as circumscribed by the terms of the Health Benefit Plans, its fiduciary duties, and the law, to determine whether claims for medical services or supplies constitute "covered expenses" and to provide benefits under the Health Benefits Plans.

7

27.     Each Health Benefit Plan offered or administered by Cigna contains claim determination procedures that purportedly comply with federal law.  The claim determination procedures do not disclose that Cigna utilizes PXDX to automatically deny claims *en masse*.

28.     Each Health Benefit Plan offered or administered by Cigna describes the information that an adverse determination notice denying a claim will provide, among other things, the specific reasons for the adverse determination and a copy of any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination. Plaintiffs and the Classes' Members' notices of adverse determination do not disclose that Cigna utilizes PXDX to automatically deny claims *en masse*.

**B.      Cigna Has Engaged in a Scheme to Automatically Deny Medical Claims**

29.     Cigna's 18 million insureds, and those insureds who have their Medical Claims administered by Cigna under their Health Benefit Plans, submit Medical Claims for health insurance coverage with the expectation and promise that they will receive a reasonable review of their Medical Claims and that Cigna will make benefit determinations in accordance with the terms of the Health Benefit Plans.

30.     Cigna represents that it will provide "quality plan options, personalized health care support, and low costs" in addition to "access to the expertise and care [patients] need, when [they] need it."[6]

31.     Plaintiffs and similarly situated insureds are legally entitled to a reasonable claim determination procedure that, at a minimum (and among other things), is not administered in such a way as to inhibit or hamper processing of claims for benefits and contains administrative

---

[6]      Health Insurance Plans for Individuals and Families, Cigna, https://www.cigna.com/individuals-families/shop-plans/health-insurance-plans/ (last visited Feb. 5, 2024).

processes and safeguards designed to ensure and to verify that benefit claims determinations are made in accordance with governing plan documents.  In administering the Health Benefit Plans, Cigna also owed to Plaintiffs and the Classes certain fiduciary duties.

32.     Moreover, each Health Benefit Plan offered or administered by Cigna expressly represents that benefits determinations would be made on the basis of medical necessity and that medical necessity would be determined by a "Medical Director" or by a "Review Organization." The term "Review Organization" is defined as "an organization with a staff of clinicians which may include Physicians, registered Graduate Nurses, licensed mental health and substance use disorder professionals, and other trained staff members who perform utilization review services." According to the Health Benefit Plans, the medical director or review organization evaluating medical necessity is supposed to determine whether a service, supply, or medication is (i) required to diagnose or treat a condition, (ii) in accordance with generally accepted standards of medical practice, (iii) clinically appropriate in terms of type, frequency, extent, site, and duration, (iv) not primarily for the convenience of the patient or health care provider, (v) not more costly than similarly effective alternatives, and (vi) rendered in the least intensive setting appropriate.

33.     In violation of Cigna's contractual and legal obligations and promises to its insureds, Cigna has engaged in, and continues to engage in, the systemic and automatic denial of Medical Claims through the use of PXDX.

34.     In March 2023, ProPublica reported that Cigna automatically denies claims using its proprietary tool PXDX. [7]

---

[7]     Patrick Rucker, et al., *How Cigna Saves Millions by Having Its Doctors Reject Claims Without Reading Them*, PROPUBLICA (Mar. 25, 2023), https://www.propublica.org/article/cigna-PXDX-medical-health-insurance-rejection-claims.

35.     PXDX automatically denies medical claims by, among other things, failing to conduct a reasonable review of those claims or a reasonable investigation into the medical records supporting the patient's medical claim.[8]

36.     The PXDX system categorizes each claim by the codes submitted by providers, such as Current Procedural Terminology or "CPT" codes.

37.     PXDX then automatically denies claims with certain codes *en masse* without reviewing Cigna performing any further reasonable review of those claims.

38.     As an example, ProPublica reported that, over a period of two months, Cigna denied over 300,000 Medical Claims using PXDX and that the "doctors" that signed the denial letters spent, on average, 1.2 seconds per claim.

39.     As former Cigna employees familiar with PXDX explained, when PXDX is used "[m]edical directors do not see any patient records or put their medical judgment to use"[9] before signing a denial of a claim.  As a former medical claims reviewer for Cigna stated: "We literally click and submit. . . . It takes all of 10 seconds to do 50 [claims] at a time."[10]

40.     This tracks the reporting that Cigna "doctors" average tens of thousands of purported "reviews" and denials a month.[11]

41.     This astounding rate of automatic denials of Medical Claims pursuant to PXDX violates state and federal regulations, such as 29 C.F.R. §2560.503–1, and fails to provide insureds with benefit determinations in accordance with the terms of the Health Benefit Plans.

---

[8]     *Id.*

[9]     *Id*.

[10]    *Id*.

[11]    *Id.*

42.     Indeed, "[b]efore health insurers reject claims for medical reasons, company doctors must review them, according to insurance laws and regulations in many states.  Medical directors are expected to examine patient records, review coverage policies and use their expertise to decide whether to approve or deny claims."[12]

43.     Automatically denying claims does not comply with Cigna's legal obligations and contractual promises when reviewing Medical Claims before making coverage determinations.

44.     The fact that PXDX bypasses a licensed, human professional to review insureds' Medical Claims was confirmed by the inventor of this program who has stated: "The PXDX stuff is not reviewed by a doc or nurse or anything like that."[13]

45.     Further, Cigna has put in place tracking tools to ensure that its scheme to automatically deny Medical Claims *en masse* is successful.  Specifically, "Cigna carefully tracks how many patient claims its medical directors handle each month" and "[t]welve times a year, medical directors receive a scorecard in the form of a spreadsheet that shows just how fast they have cleared PXDX cases."[14]

46.     These tracking tools are meant to ensure that Cigna's medical directors participate in, and keep pace with, Cigna's wrongful scheme to automatically deny Medical Claims.

47.     As ProPublica reported, one of Cigna's doctors, Cheryl Dopke, "rejected 121,000 claims in the first two months of 2022, according to the scorecard[,]" while "another Cigna medical director, handled more than 80,000 instant denials in the same time span."[15]  As noted above, Dr.

---

[12]     *Id*.

[13]     *Id*.

[14]     *Id*.

[15]     *Id*.

Dopke, is the doctor who performed the purported "review" and denial of Plaintiff Schultz's Medical Claims using PXDX.

48. Dr. Paul Rossi, who "has been a medical director at Cigna for over 30 years," also "denied more than 63,000 PXDX claims in two months" in early 2022.[16]  As also noted above, Dr. Rossi is the doctor who performed the purported "review" and denial of Plaintiff Snyder's Medical Claims by using PXDX.

### C. Cigna Has Perpetuated Its Automatic Claims Denial Scheme for Years

49. The PXDX system was developed over a decade ago by a doctor employed by Defendant the Cigna Group (formerly known as Cigna Corporation).

50. In 2010, the Cigna Group employee, Dr. Alan Muney ("Muney"), was "managing health insurance for companies owned by Blackstone, the private equity firm, when Cigna tapped him to help spot savings in its operation[.]"[17]

51. "At Cigna, Muney and his team created a list of tests and procedures approved for use with certain illnesses.  The system would automatically turn down payment for a treatment that didn't match one of the conditions on the list.  Denials were then sent to medical directors, who would reject these claims with no review of the patient file."[18]

52. This list was eventually called "PXDX" which is Cigna's shorthand for procedure-to-diagnosis.

53. Given that this system has been in place for over a decade, millions of insureds claims have been wrongfully deprived of a reasonable claims determination procedure and many

---

[16]     *Id*.

[17]     Rucker, *supra*, note 8.

[18]     *Id*.

have had to pay out of pocket or endure the lengthy appeals process for the claims that were automatically denied using this pernicious system.

### D.     Cigna Implemented PXDX to Increase Profits at Patients' Expense

54.     The new PXDX system was set up to deny claims that were previously covered.

55.     Indeed, internal documents expressly state that customers will "be denied claims that were previously accepted."[19]

56.     Cigna's implementation of the PXDX system to automatically deny Medical Claims *en masse* without providing a reasonable review served to benefit Cigna's financial bottom line.  In fact, in the words of PXDX's creator, the system has "undoubtedly saved billions of dollars" for Cigna.[20]

57.     Cigna's use of the PXDX automatic claims denial system creates these substantial savings for Cigna in multiple ways.  Specifically, "[i]t allowed Cigna to begin turning down claims that it had once paid.  And it made it cheaper to turn down claims, because the company's doctors never had to open a file or conduct any in-depth review.  They simply denied the claims in bulk with an electronic signature."[21] An in-depth review may be especially necessary when a patient has, for example, attempted to receive multiple treatments for an existing injury or visited multiple doctors in order to confirm a diagnosis, and yet despite being certain treatment is necessary – a denial may be programmed by Cigna's PXDX because of the lack of human oversight as is legally required.

58.     By using the PXDX automatic claims denial system, Cigna foregoes the substantial costs associated with paying doctors to conduct a reasonable review of insureds' Medical Claims.

---

[19]     *See* Exhibit A.

[20]     Rucker, *supra*, note 8.

[21]     *Id*.

In fact, when Medical Claims are reviewed properly, it costs a few hundred dollars an hour in labor for a medically licensed practitioner to review a submitted claim.  In stark contrast, as detailed above, Cigna's use of the PXDX automatic claims denial system shortens a doctor's claim "review" time to as little as 1.2 seconds.  Thus, by using PXDX, Cigna has substantially reduced the labor costs associated with performing a reasonable review of insureds' Medical Claims as it is required to do by law and contract.  As such, Cigna should be ordered to disgorge these profits to remedy its unjust enrichment and the harm it caused to Plaintiffs and members of the Classes.

59.     In addition to the substantial labor cost savings Cigna reaps by using PXDX, Cigna also uses PXDX to allow medical directors to sign off on PXDX denials in batches of mismatched diagnoses and test/procedures in order to eschew meaningful oversight or meaningful secondary review of submitted medical claims.  The PXDX automatic claims denial system's arbitrary batching results in the indiscriminate denial of Medical Claims that were previously paid by Cigna – and forces Cigna's insureds and/or those with Health Benefit Plans administered by Cigna to pay out of pocket for tests and procedures that their Health Benefit Plans should have covered.

60.     As a result, Cigna illegally profits by denying claims that it once paid (thereby saving Cigna money that it would have otherwise spent on medically necessary care) and cutting substantial labor costs otherwise spent on employing medically trained and licensed claims reviewers to perform a reasonable review of Medical Claims.

61.     "[T]he PXDX list is focused on tests and treatments that typically cost a few hundred dollars each, said former Cigna employees;" therefore, "Cigna knows that many patients will pay such bills rather than deal with the hassle of appealing a rejection, according to . . . former

employees of the company."[22]  Tellingly, "[i]n one corporate document, Cigna estimated ***that only 5% of people would appeal a denial resulting from a PXDX review***."[23] [Emphasis added.]

62.     Cigna recommended adding tests to PXDX as a business determination before evaluating the medical necessity of those tests for patients or creating a policy backed by medical data.

63.     Upon information and belief, one example comes from a Business Impact Presentation related to Autonomic Nervous System ("ANS") testing performed on individuals with specific symptoms to help diagnose and manage ANS dysfunction.[24]

64.     The Presentation recommended including certain ANS testing in PXDX even though ANS tests "are PROVEN useful to diagnose some conditions[.]"[25]

65.     The business decision to include certain ANS testing in PXDX was made ***before*** creating the Medical Coverage Policy justifying the coverage determination stating: "CPU ***will develop and post a coverage policy*** and implement CPT codes 95921, 95922, 95923, 95924, 95943 using a PXDX edit."[26] [Emphasis added.]

66.     Additionally, Cigna's Presentation showed that claims that were previously covered were now going to be denied based on its cost savings analysis, which Cigna knew would cause a negative customer experience.

67.     The Presentation included a "Cost Benefit Analysis" approved by the Medical Economics team that determined that by denying 17,870 claims with an average cost of $143.00,

---

[22]     *Id*.

[23]     *Id*.

[24]     *See* Exhibit A.

[25]     *Id.* at 2.

[26]     *Id*.

Cigna would save $2.4 million – but acknowledged that this cost would be saved through the "potential for increased out of pocket costs" from customers.[27]

68.     In fact, the addition of five CPT codes would negatively impact over 8,000 customers annually.  For example:



---

[27]     *Id.* at 2, 7, 8.

## Overview/Background Information

- Autonomic nervous system (ANS) testing is performed on individuals with specific symptoms to help diagnose & manage autonomic nervous system dysfunction. CPU will develop and post a coverage policy and implement CPT codes 95921, 95922, 95923, 95924, 95943 using a PXDX edit. ANS testing will be COVERED for specific medically necessary diagnosis codes and DENIED as EIU for all other codes.
- These tests are PROVEN useful to diagnose some conditions; and is UNPROVEN for other diagnoses. In many conditions testing is not clinically useful.

- **Estimated Annual Total Medical Cost Savings: $2.4M**
- **Estimated Annual Service Denials:  17,870**
- **Estimated Average Cost per Service:  $143**

- Medical necessity appeal rights will be issued
- Competitive Landscape:  All competitors who have policies agree.  Neurological societies agree: American Academy of Neurology, American Association of Neuromuscular and Electrodiagnostic Medicine

Confidential, unpublished property of Cigna. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © 2014 Cigna

Cigna. 2

## Customer Experience Impact

| Question | Answer/Additional Clarification |
|---|---|
| Will this initiative increase Dr./Hospital/Clinic/Pharmacy choices, reduce it or have no effect? | No Impact |
| Will customers have to change Dr./Hospital/Clinic/Pharmacy as a result of this initiative? If yes, please explain. | No Impact |
| Will customers be denied claims that were previously accepted? If yes, please explain. | Yes. Customers could see claim denials for Autonomic Nervous System Testing (CPT codes 95921, 95922, 92923, 95924 and 95943) |
| Will customers see any reduced or increased out of pocket costs? | Yes, a potential for increased out of pocket costs if non-participating HCPs are utilized. |
| When and how will customers become aware of any changes to their coverage? | No coverage changes. |
| Will this create a negative customer experience? | Yes<br>Note:  Annualized estimated impact = 8K customers |
| Will this have a significant impact (positive or negative) on customer loyalty (i.e. likelihood of the customer to recommend Cigna)? | TBD |
| If a vendor is involved what will the vendor's responsibilities include? | No Vendor Impacts |
| 1. Will the vendor outreach directly to the customer (email, letters, phone, etc.)? | N/A |
| 2. Will that outreach look and feel like it's coming from Cigna or the vendor? | N/A |
| 3. Will the customer outreach directly to the vendor (phone, web, etc.)? | N/A |
| 4. Will the vendor act and feel like Cigna? | N/A |
| 5. If the customer calls Cigna but should have called the vendor, will the customer be warm transferred? | N/A |

69.     This results in patients paying out of pocket for medical bills associated with Medical Claims that should have been covered by their Health Benefit Plans.  Indeed, after ProPublica brought Cigna's wrongful conduct to light, the U.S. House of Representatives

Committee on Energy and Commerce issued a letter to the President and CEO of the Cigna Group asking for information and noting that while only five percent (5%) of individuals covered under insurance policies whose claims were denied by Cigna's automatic claims denial system appealed the decision, 20% of members enrolled in Medicare Advantage plans whose claims were similarly denied appealed the decision, and a full 80% of those denials were reversed on appeal.  The letter suggested that Cigna's automatic claims denials on were "leading to patients paying out-of-pocket for medical care that should be covered under their insurance policy contract."[28]  Those patients who opt to appeal Cigna's PXDX denial are then forced to spend their own time and resources in appealing the "review" of a medical claim that was never "reviewed" in the first place.

> ### E. Plaintiffs and Members of the Classes Were Harmed by Cigna's Illegal Scheme

70.     While Cigna illegally profits from using PXDX to automatically deny Medical Claims instead of performing a reasonable review, wrongfully denying hundreds of thousands of Medical Claims per year, Cigna's insureds and individuals whose Health Benefit Plans are administered by Cigna were wrongfully deprived of a reasonable claims determination procedure and many have paid out of pocket or endured lengthy appeals for Medical Claims that were wrongfully denied through Cigna's use of PXDX.

71.     Plaintiff Snyder was and continues to be enrolled in a self-insured Health Benefit Plan administered by Defendant Cigna Health and Life.

72.     Plaintiff Snyder has had Medical Claims automatically denied through Cigna's PXDX automatic claims denial system instead of Cigna performing a reasonable review of Medical Claims that Plaintiff Snyder submitted to her Health Benefit Plan.

---

[28]     Letter from House of Representatives Committee on Energy and Commerce to David Cortani, President and CEO of Cigna, (May 16, 2023), https://energycommerce.house.gov/posts/e-and-c-republicans-press-cigna-for-clarification-after-investigative-report-accuses-insurance-company-of-denying-claims-without-reading-them.

73.     For example, in or around November 2021, Plaintiff Snyder was experiencing substantial pain in her pelvic region and sought medical care to determine the source of this extreme discomfort.  Eventually, Plaintiff Snyder's doctor diagnosed her as suffering from deep infiltrating endometriosis, which was advanced and spreading.

74.     On April 22, 2022, Plaintiff Snyder underwent a four and a half-hour medically necessary surgery to treat her endometriosis.  During the surgery, Plaintiff Snyder's doctor discovered that one of Plaintiff Snyder's fallopian tubes needed to be removed.  To accurately diagnose the issue with Plaintiff Snyder's fallopian tubes, Plaintiff Snyder's doctors ordered a test to determine whether she had Human Papillomavirus ("HPV").

75.     After the surgery, a claim for coverage of the HPV diagnostic test was submitted. On May 21, 2022, Defendant Cigna Health Management, Inc. sent Plaintiff Snyder a denial letter. The denial letter stated that Cigna would not cover the $299.16 charge, and it was automatically denied without physician review.

76.     The bottom right-hand corner of the denial letter that Plaintiff Snyder received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX. Moreover, the denial letter was signed by Paul Rossi, a long-time Cigna medical director who, as discussed above, in early 2022 alone denied tens of thousands of claims submitted by patients for coverage.

77.     Accordingly, Defendants failed to have any doctor conduct a reasonable review or any investigation into Plaintiff Snyder's Medical Claim for coverage of the test, and instead, had Dr. Rossi rubber stamp this denial, alongside thousands of others based on Cigna's automatic PXDX claims denial system.

78.     As a result of Defendants' unlawful conduct, including use of the PXDX automatic claims denial system to automatically deny Medical Claims, Plaintiff Snyder was denied a reasonable claims determination procedure.

79.     Plaintiff Wingo has also had Medical Claims automatically denied through Cigna's PXDX automatic claims denial system instead of Defendants performing a reasonable review of claims that Plaintiff Wingo submitted to his Health Benefit Plan.

80.     On or around March 31, 2023, Plaintiff Wingo's doctor ordered testing related to a primary diagnosis.  Plaintiff Wingo had the testing ordered by his doctor performed.  After this testing was performed, a Medical Claim for coverage of the testing was submitted.

81.     On May 31, 2023, Defendant Cigna Health Management, Inc. sent Plaintiff Wingo a denial letter.  The denial letter stated that Cigna would not cover the $241.84 charge for primary diagnosis testing, and it was automatically denied without physician review.

82.     The bottom right-hand corner of the denial letter that Plaintiff Wingo received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX.

83.     Further, on July 24, 2023, Plaintiff Wingo's dependent and Health Benefit Plan beneficiary ("Ms. Wingo") began experiencing flu-like symptoms.  To diagnosis this medical issue, Ms. Wingo's doctor ordered acute upper respiratory infection testing.

84.     Ms. Wingo had the acute upper respiratory infection testing ordered by her doctor performed.  After this testing was performed, a Medical Claim for coverage of the acute upper respiratory testing was submitted.

85.     On September 21, 2023, Defendant Cigna Health Management, Inc. sent Plaintiff Wingo a denial letter.  The denial letter stated that Cigna would not cover the $167.00 charge for acute upper respiratory infection testing.

86.     The bottom right-hand corner of the denial letter that Plaintiff Wingo received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX.

87.     Accordingly, upon information and belief, Defendants failed to have any doctor conduct a reasonable review or thorough, fair, and objective investigation into Plaintiff Wingo's Medical Claims for coverage, and instead, had these Medical Claims denied, alongside hundreds of thousands of others, based on Cigna's automated PXDX claims denial system.

88.     As a result of the Defendants' unlawful conduct, including its use of the PXDX automatic claims denial system to automatically review claims, Plaintiff Wingo was left with an unexpected medical bill for a test that his dependent's doctor had ordered, which should have been subject to a reasonable review and should have been covered under his Health Benefit Plan.

89.     Plaintiff Whitney has also had Medical Claims automatically denied through Cigna's PXDX automatic claims denial system instead of Defendants performing a reasonable review of claims that Plaintiff Whitney submitted to her Health Benefit Plan.

90.     On or around August 31, 2023, Plaintiff Whitney's doctor performed a procedure on Plaintiff Whitney.  After the procedure was performed, a Medical Claim for coverage of the testing was submitted.

91.     On September 18, 2023, Defendant Cigna Health Management, Inc. sent Plaintiff Whitney two denial letters.

92.     The first denial letter dated September 18, 2023, stated that Cigna would not cover the $1,096.00 charge for the service, and it was automatically denied without physician review.

93.     The bottom right-hand corner of the denial letter that Plaintiff Whitney received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX.

94.     The second denial letter, also dated September 18, 2023, stated that Cigna would not cover the $2,002.00 charge for the service, and it was automatically denied without physician review.

95.     The bottom right-hand corners of both denial letters that Plaintiff Whitney received from Defendant Cigna Health Management, Inc. indicate that the denials were determined by PXDX.

96.     Accordingly, Defendants failed to have any doctor conduct a reasonable review or thorough, fair, and objective investigation into Plaintiff Whitney's Medical Claims for coverage and instead had these Medical Claims denied, alongside hundreds of thousands of others, based on Cigna's automated PXDX claims denial system.

97.     As a result of Defendants' unlawful conduct, including its use of the PXDX automatic claims denial system, Plaintiff Whitney was left with an unexpected medical bill for a service her doctor performed, which should have been subject to a reasonable review and should have been covered under her Health Benefit Plan.

98.     Plaintiff Schultz also had Medical Claims automatically denied through Cigna's PXDX automated claims denial system, instead of Defendants performing a reasonable review of claims that Plaintiff Schultz submitted to his Health Benefit Plan.

99.     Plaintiff Schultz has a genetic predisposition to autoimmune disorders, and his mother and brother also suffer from autoimmune conditions.  Plaintiff Schultz previously tested positive for an Antinuclear Antibody ("ANA") test that found antinuclear antibodies in his blood— meaning that Plaintiff Schultz is in a higher risk category for autoimmune disorders.

100.    On or around February 1, 2022, Plaintiff Schultz was exhibiting a rash along his abdomen, a symptom of a potentially serious autoimmune condition when the immune system begins attacking healthy cells.

101.    Accordingly, Plaintiff Schultz scheduled an appointment and visited Dr. Sandler at NorthShore University Health System in Illinois.

102.    Dr. Sandler performed a Vitamin D Testing procedure on Plaintiff Schultz as an initial indicator whether he would need additional, and more expensive, blood work performed to test for autoimmune disorders.

103.    After the Vitamin D Testing procedure was performed, a Medical Claim for coverage of the testing was submitted.

104.    On February 7, 2022, Defendant Cigna Health Management, Inc. sent Plaintiff Schultz a denial letter that stated that Cigna would not pay the $182.00 charge for the service, and it was automatically denied without physician review.

105.    The bottom right-hand corner of the denial letter that Plaintiff Schultz received from Defendant Cigna Health Management, Inc. indicates that the denial was determined by PXDX.

106.    Plaintiff Schultz was then charged the $182.00 that was denied by Cigna by his medical provider.

107.    Accordingly, upon information and belief, Defendants failed to have any doctor conduct a reasonable review or thorough, fair, and objective investigation into Plaintiff Schultz's Medical Claims for coverage, and instead, had these Medical Claims denied, alongside hundreds of thousands of others, based on Cigna's automated PXDX claims denial system.

108.    As a result of the Defendants' unlawful conduct, including its use of the PXDX automated claims denial system to automatically review claims, Plaintiff Schultz was left with an unexpected medical bill for a service his doctor performed, which should have been subject to a reasonable review and should have been covered under his Health Benefit Plan.

109.    Upon information and belief, members of the Classes have been subject to the same lack of a reasonable review of their claims by Cigna, and instead, have been subject to Cigna's use of PXDX to automatically deny Medical Claims, and Cigna's medical doctors' rubber stamping of denials.

110.    As a direct result of Defendants' unlawful conduct, Plaintiffs and members of the Classes have been deprived, and continue to be deprived, of a reasonable claims determination procedure, have paid and will continue to pay out of pocket for wrongfully denied claims, and are entitled to all damages, equitable and injunctive relief, statutory and punitive damages, restitution, and disgorgement, among other remedies.

F.    **Cigna Is a Fiduciary and Party in Interest**

111.    Plaintiffs Wingo, Whitney, and Schultz and the members of the ERISA Class are participants in or beneficiaries of employee welfare benefit plans as that term is defined in 29 U.S.C. §§1002(1)(A) and (8), with benefit determinations administered by Defendants to provide participants or beneficiaries with insurance coverage for health benefits.

112.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan."  ERISA §402(a)(1), 29 U.S.C. §1102(a)(1).

113.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under §402(a)(1), 29 U.S.C. §1102(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority

or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).  This is a functional test.  Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

114.    In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA Plans and their participants.  The power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.  An appointing fiduciary must take prudent and reasonable action to determine whether the appointees are fulfilling their own separate fiduciary obligations.

115.    Cigna is a fiduciary of all of the ERISA Class members' Health Benefit Plans ("ERISA Health Benefit Plans") to which it provided health benefits or for which it administered such benefits in that it exercised discretionary authority or control respecting plan management activities, ERISA §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i), and in that it had discretionary authority or discretionary responsibility in the administration of the Plans of participants and beneficiaries in the ERISA Class, ERISA §3(21)(A)(iii), 29 U.S.C. §1002(21)(A)(iii).

116.    Moreover, the ERISA Health Benefit Plans expressly granted Cigna broad discretionary authority under the ERISA Health Benefit Plans, including the authority to determine benefit payments.

117.     In addition to its fiduciary status under the foregoing provisions, Cigna is a fiduciary of all of the ERISA Class members' ERISA Health Benefit Plans in that it exercised authority or control respecting management or disposition of plan assets, ERISA §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i), because:

(a)     The insurance policies, ASO agreements, and other contracts underpinning the ERISA Health Benefit Plans are "plan assets" within the meaning of ERISA;

(b)     Through its conduct as described herein, Cigna exercised control over the contracts underpinning the ERISA Health Benefit Plans, successfully leveraged its relationships to the ERISA Class members' Plans to benefit itself, its affiliates, and third parties, and its authority or control over these significant plan assets enabled it to do so.

118.     In addition, any ERISA Health Benefit Plan-paid amounts that were contributed to participant healthcare services transactions were "plan assets" within the meaning of ERISA. Incident to its scheme, Cigna also exercised control over these plan assets, making it a fiduciary for purposes of these transactions.

119.     Cigna is also a fiduciary because it exercises discretion to grant or deny benefits and to make benefit determinations in accordance with the terms of the Health Benefit Plans. Cigna is required to act in the best interests of the ERISA Class, but by allowing participants and beneficiaries of ERISA Health Benefit Plans to be subject to the conduct described herein, Cigna has breached its fiduciary duties.

120.     Cigna is aware of the effect of this conduct alleged herein has had on the ERISA Class.  Nevertheless, Cigna has maximized its revenues at the expense of the ERISA Class by engaging in the unlawful conduct described herein.

121.    Furthermore, in negotiating and entering into a contract on behalf of an ERISA Health Benefit Plan, a fiduciary must act prudently and negotiate terms that are reasonable and in the best interests of plan participants.  In these negotiations and in the contract that is ultimately agreed upon, a fiduciary cannot place its interests over the interests of the plan participants and beneficiaries.

122.    Cigna is also a party in interest under ERISA because (a) it is a fiduciary, ERISA §3(14)(A), 29 U.S.C. §1002(14)(A); and/or (b) it provided insurance, plan administration, and healthcare management services to Plaintiffs Wingo, Whitney, and Schultz's and the ERISA Class members' ERISA Health Benefit Plans, ERISA §3(14)(B), 29 U.S.C. §1002(14)(B).

123.    As a party in interest, Cigna received direct and indirect compensation for services, some of which was in the form of excess amounts that was collected in exchange for few to no services.  Cigna also received and used for its own and its affiliates' benefits "plan assets," including ERISA Health Benefit Plan contracts under which it had access to the ERISA Health Benefit Plans and were able to impose its PXDX program on the ERISA Class.

124.    Even if any Defendant is found not to be a fiduciary, that Defendant is alternatively subject to equitable relief under ERISA, because they had actual or constructive knowledge of the ERISA violations through their role in denying benefits through the use of PXDX.

### G.    Cigna's ERISA Duties

125.    **The Statutory Requirements**.  ERISA imposes strict fiduciary duties upon plan fiduciaries.  ERISA §404(a), 29 U.S.C. §1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; . . . (D) in accordance with the

27

documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title] and [Title IV].

126. **The Duty of Loyalty**. ERISA imposes on a plan fiduciary the duty of loyalty – that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ." The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

127. **The Duty of Prudence.** Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence – that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

128. **The Duty to Inform**. The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: (a) a negative duty not to misinform; (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (c) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

129. **Co-Fiduciary Liability.** A fiduciary is liable not only for fiduciary breaches within the sphere of its own responsibility, but also as a co-fiduciary in certain circumstances. ERISA §405(a), 29 U.S.C. §1105(a), states, in relevant part, that:

   (a) In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary

responsibility of another fiduciary with respect to the same plan in the following circumstances:

    (1) If he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

    (2) If, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

    (3) If he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

130.    **The Duty to Monitor.**  In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor the appointee to protect the interests of the ERISA participants and beneficiaries.  The power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.

131.    **The Regulatory Requirements**.  Regulations promulgated under ERISA require that every employee benefit plan "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations[.]" 29 C.F.R. §2560-503-1(b).  For claims procedures to be deemed reasonable under the regulations, they must at a minimum (and among other things) be described in the plan's summary plan description, *id*., §2560-503-1(b)(2), "do not contain any provision, and are not administered in a way, that unduly inhibits or hampers the . . . processing of claims for benefits;" *id*., §2560-503-1(b)(3), "contain administrative processes and safeguards designed to ensure and to verify that benefit claims determinations are made in accordance with governing plan documents," *id*., §2560-503-1(b)(5), identify or offer to identify any "internal rule, guideline, protocol, or other similar criterion [that] was relied upon in making [an] adverse determination," *id*., §2560-503-1(g)(1)(v)(A), and explain or offer to explain the scientific or clinical judgment

supporting any adverse medical determination made on the basis of medical non-necessity, *id.*, §2560-503-1(g)(1)(v)(B).

132. **Non-Fiduciary Liability.** Under ERISA, non-fiduciaries – regardless of whether they are parties in interest – who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). Accordingly, as to the ERISA claims, even if any Defendant is not found to have fiduciary or party-in-interest status themselves, they must nevertheless restore unjust profits or fees and are subject to other appropriate equitable relief with regard to the transactions at issue in this action, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), and well-established case law. To the extent that any Defendant is not deemed to be a fiduciary or a party-in-interest with regard to any transaction at issue in this action, they are nevertheless subject to equitable relief under ERISA based on their actual or constructive knowledge of the wrongdoing at issue.

133. **Rights of Action Under the Plans, for Fiduciary Breach, and Related Claims.** ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), provides that a participant or beneficiary may bring an action to enforce rights under the terms of the plan or to clarify his or her rights to future benefits under the terms of the plan. Further, ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), authorizes individual participants and fiduciaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Additionally, a participant or beneficiary is authorized to seek relief under ERISA §502(a) where a plan has not established or followed a claims procedure consistent with the regulations promulgated under ERISA. 29 C.F.R. §2560-503-1(l)(1). One making such a claim under the regulations is deemed to have exhausted administrative remedies where "the plan

has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.*

134.    The remedies available pursuant to §502(a)(3) include remedies for breaches of the fiduciary duties set forth in ERISA §404, 29 U.S.C. §1104.  Further, ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA §409.  ERISA §409, 29 U.S.C. §1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets.  ERISA §409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.  Plaintiffs Wingo, Whitney, and Schultz bring the ERISA claims pursuant to ERISA §502(a)(3) and §502(a)(1)(B), as further set forth below, because not all the remedies that Plaintiffs Wingo, Whitney, and Schultz seek are available under all sections of ERISA and, alternatively, Plaintiffs Wingo, Whitney, and Schultz are pleading the ERISA claims in the alternative.

### H.    Cigna Breached Its Duties

135.    Cigna breached the terms of the ERISA Health Benefit Plans and legal obligations, committed breaches of fiduciary duties, and was unjustly enriched in doing so thereby harming Plaintiffs Wingo, Whitney, and Schultz, and ERISA Class members in the following ways:

(a)    improperly delegating its reasonable claims determination function to the PXDX system, which uses an automated process to improperly deny claims;

(b)    improperly allowing its medical directors to sign off on the denials without individually reviewing each patient's file;

31

(c)      failing to have its medical directors conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials.

(d)      maximizing its own profits, profits to its affiliates, and profits to third parties, at the expense of the ERISA Class members;

(e)      failing to monitor its appointees, formal delegates, and informal designees in the performance of their fiduciary duties;

(f)      failing to describe in its summary plan descriptions the role that PXDX plays in the claims determination process;

(g)      failing to maintain administrative processes and safeguards designed to ensure that claim determinations are made in accordance with governing plan documents (which require, among other things, that questions of medical necessity be determined by medical directors or "Review Organizations" staffed by clinicians and other trained staff members who perform utilization review services);

(h)      failing to state or offer to state in notices of adverse determinations that it relied on an internal rule, guideline, protocol, or other similar criterion – specifically, on a automated system, PXDX – in reaching its determinations; and

(i)      failing to explain or offer to explain in notices of adverse determinations that the only clinical or scientific judgment supporting its denials were exercised by an automated system grouping claims for determination without review by diagnosis codes.

136.    Plaintiffs Wingo, Whitney, and Schultz, and ERISA Class members were denied a reasonable claims determination procedure, and some paid out of pocket for medically necessary

healthcare services, endured lengthy appeals procedures, and/or could not receive medically necessary healthcare services that should have been covered under their ERISA Health Benefit Plans due to Cigna's improper denial of Medical Claims.

     **I.**     **Exhaustion of Administrative Remedies Do Not Apply or Are Futile**

     137.     Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class are not required to exhaust administrative remedies. Only a claim under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), could concern exhaustion of administrative remedies. Accordingly, only Count VIII is arguably implicated by that doctrine. Moreover, the exhaustion doctrine does not apply under that Count because Plaintiffs seek to enforce their rights under the terms of the ERISA Health Benefit Plans and clarify future rights, not recover benefits due. Finally, because the injuries to Plaintiffs and the ERISA Class are part of a nationwide, clandestine, automated scheme, any attempt to rectify the harm through administrative means would be futile and unnecessary.

     138.     Furthermore, Plaintiffs' allegations establish that Cigna has not established or followed a reasonable claims procedure consistent with the regulations promulgated under ERISA, 29 C.F.R. §2560-503-1(l)(1), and thus are "deemed to have exhausted the administrative remedies[.]" *Id.*

## V.     FRAUDULENT CONCEALMENT AND TOLLING OF STATUTES OF LIMITATIONS

     139.     Plaintiffs repeat and incorporate all other paragraphs as if fully set forth herein.

     140.     Plaintiffs and members of the Classes did not know and could not have known that Defendants were using PXDX to carry out a scheme to automatically deny Medical Claims instead of performing a reasonable review of Medical Claims and to illegally deny insureds a reasonable review of their Medical Claims and to deny coverage of Medical Claims.

141.    Defendants' knowing and active concealment of their fraudulent scheme and the misrepresentations and omissions alleged herein toll any applicable statute of limitations.  Through no fault of their own, and not for any lack of due diligence, Plaintiffs and members of the Classes were deceived regarding Defendants' claims review and administration process and could not reasonably discover Defendants' illegal scheme or Defendants' deception with respect to its use of PXDX to automatically deny Medical Claims.

142.    Defendants' illegal scheme depended on concealing from insureds their use of PXDX in medical claims review and determinations and to deny insureds a reasonable review of their claims.  Plaintiffs and members of the Classes could not have discovered the scheme alleged herein earlier in the exercise of reasonable diligence.

143.    Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a fraudulent scheme and use PXDX to automatically deny Medical Claims, and to deny insureds a reasonable review of Medical Claims and to wrongfully deny Medical Claims for medically necessary procedures and testing.  As alleged herein, a reasonable review of their Medical Claims for coverage was material to Plaintiffs and members of the Classes at all relevant times.  Within the time period of any applicable statute of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence the existence of Defendants' fraudulent scheme.

144.    At all times, Defendants were under a continuous duty to provide a reasonable review of Plaintiffs and members of the Classes' Medical Claims and through their misrepresentations and/or omissions indicated that they were providing such a review.

145.    Defendants knowingly, actively, and affirmatively concealed the facts and underlying deceptive conduct alleged herein.  Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active, and affirmative concealment.  Plaintiffs could not have reasonably discovered Defendants' fraudulent scheme through due diligence.

146.    The earliest Plaintiffs could have reasonably become aware of the fraudulent scheme was March 25, 2023, when ProPublica publicly revealed Defendants' use of the PXDX system to automatically deny Medical Claims.

147.    Any applicable statutes of limitations have been tolled based on the discovery rule and Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiffs have been kept in ignorance of vital information essential to the pursuit of their claims, without any fault or lack of diligence on their part.  Plaintiffs could not reasonably have discovered the fraudulent nature of Defendants' conduct.  Accordingly, Defendants are estopped from relying on any statute of limitations to defeat any of Plaintiffs' claims.

## VI.    CLASS ACTION ALLEGATIONS

148.    Plaintiff Snyder brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Nationwide Non-ERISA Class and Subclass.

> **Nationwide Non-ERISA Class**: All persons who entered into an agreement to receive insurance coverage under a Health Benefit Plan in the United States that is not established or maintained under ERISA and had their Medical Claim denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system (the "Nationwide Non-ERISA Class").

> **District of Columbia Subclass:** All persons who: 1) reside in the District of Columbia and entered into an agreement to receive insurance coverage under a

Health Benefit Plan that is not established or maintained under ERISA and had their Medical Claims denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system;  or 2) who entered into an agreement to receive insurance coverage under a Health Benefit Plan in the District of Columbia that is not established or maintained under ERISA and had their Medical Claims denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system (the "D.C. Subclass").

**Virginia Subclass:** All persons who entered into an agreement to receive insurance coverage under a Health Benefit Plan in the Commonwealth of Virginia that is not established or maintained under ERISA and had their Medical Claims denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system (the "Virginia Subclass").

149.    Plaintiffs Wingo, Whitney, and Schultz bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following ERISA Class.

**ERISA Class**: All persons who entered into an agreement to receive insurance coverage under a Health Benefit Plan in the United States that is established and maintained under ERISA and had their Medical Claims denied by Cigna or a Cigna parent, affiliate, or subsidiary via the PXDX system (the "ERISA Class").

150.    Excluded from the Classes and Subclasses are Defendants, their parents, subsidiaries, corporate affiliates, Defendants' officers or directors; the judicial officers to whom this case is assigned and any members of their staffs and immediate families; and any heirs, assigns, or successors of any of the persons or entities described in this paragraph above.

151.    Plaintiffs reserve the right to revise the definition of the Classes and Subclasses based upon subsequently discovered information and reserve the right to establish additional

36

subclasses where appropriate.  The Classes and Subclasses are collectively referred to herein as the "Classes."

152.    The Classes are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

153.    Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes.  The common and predominating questions of law and fact include, but are not limited to:

(a)    Whether Cigna engaged in the unlawful conduct alleged herein;

(b)    Whether through the acts and conduct alleged herein, Cigna violated its express and/or implied obligations to members of the Classes;

(c)    Whether Cigna's conduct alleged herein breached its contracts of insurance and/or contracts for claims administration to which Plaintiff Snyder and members of the Nationwide Non-ERISA Class were intended beneficiaries;

(d)    Whether Cigna breached its implied covenant of good faith and fair dealing to Plaintiff Snyder and members of the Nationwide Non-ERISA Class;

(e)    Whether Cigna breached its fiduciary duties owed to Plaintiff Snyder and members of the Nationwide Non-ERISA Class and Subclasses;

(f)    Whether as a result of Cigna's wrongful conduct as alleged herein, Cigna has been unjustly enriched at the expense of, and to the detriment of, Plaintiff Snyder and members of the Nationwide Non-ERISA Class and Subclasses;

(g)    Whether Cigna violated the District of Columbia Consumer Protection Procedures Act as to Plaintiff Snyder and the Nationwide Non-ERISA Class;

(h)      Whether Cigna misrepresented, concealed, and/or omitted information about its use of PXDX, causing Plaintiffs and other members of the Classes to, *inter alia*, be denied a reasonable claims determination procedure and pay out of pocket for wrongfully denied claims;

(i)      Whether as to the Nationwide Non-ERISA Class, Cigna violated Virginia Code §59.1-196, *et seq.*;

(j)      Whether as to the ERISA Class, Cigna is a fiduciary under ERISA;

(k)      Whether as to the ERISA Class, Cigna is a party in interest under ERISA;

(l)      Whether as to the ERISA Class, Cigna wrongfully denied Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class benefits under the ERISA Health Benefit Plans;

(m)      Whether as to the ERISA Class, Cigna breached its fiduciary duties in failing to comply with ERISA as alleged;

(n)      Whether as to the ERISA Class, Cigna violated regulations promulgated under ERISA for the creation and maintenance of reasonable claims determination procedures;

(o)      Whether Cigna should be ordered to cease using the PXDX system to automatically deny Medical Claims;

(p)      Whether Cigna should be ordered to re-process all Medical Claims reviewed and denied using the PXDX system;

(q)      Whether, as a result of Cigna's misconduct as alleged herein, Plaintiffs and members of the Classes are entitled to damages, including compensatory, statutory, exemplary and/or punitive damages, restitution, disgorgement, and/or equitable, injunctive or declaratory relief.

154.     Plaintiffs' claims are typical of the claims of the Classes that Plaintiffs seek to represent in that Plaintiffs' and the Classes' claims all arise out of the same unlawful actions and conduct by Defendants.

155.     Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all the obligations and duties material thereto.  Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

156.     Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes.  Plaintiffs will represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

157.     Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

158.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

159.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

160.     The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief and/or corresponding declaratory relief with respect to the Classes.

161.     The Classes may also be certified under Rule 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

162.     The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

## VII.    CLAIMS FOR RELIEF

**COUNT I**
**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201,** *et seq.*
**(On behalf of Plaintiff Snyder and the Non-ERISA Classes)**

163.     Plaintiff Snyder incorporates by reference the preceding paragraphs as if they were fully set forth herein.

164.     Plaintiff Snyder brings this claim on behalf of herself and the Non-ERISA Classes.

165.     Plaintiff Snyder and members of the Non-ERISA Classes either entered into written insurance contracts with Cigna or with Health Benefit Plans that contracted with Cigna to provide claims administration services.  Plaintiff Snyder and members of the Non-ERISA Classes were intended beneficiaries of any contract between Cigna and Health Benefit Plans to provide claims administration services.  Plaintiff Snyder and members of the Non-ERISA Classes continue to be covered by these Health Benefit Plans that Cigna either offers or administers.

166.     Medical Claims that were submitted on behalf of Plaintiff Snyder and the Non-ERISA Classes were automatically denied by Cigna through the PXDX system.  Medical Claims will continue to be submitted on behalf of Plaintiff Snyder and members of the Non-ERISA Classes and will continue to be subjected to review by PXDX.

167.     An actual case or controversy exists regarding the rights of Plaintiff Snyder and members of the Non-ERISA Classes and Defendants' obligations as an issuer of insurance and/or claims administrator for the Health Benefit Plans.

168.     It is necessary to resolve Plaintiff Snyder's rights and Defendants' obligations as an issuer of insurance and/or claims administrator for the Health Benefit Plans and to determine whether Plaintiff Snyder and members of the Non-ERISA Classes have not received, and will continue to not receive, the insurance coverage and/or services they are owed, including Medical Claims review and administration services, under the terms of insurance under the Health Benefit Plans.

169.     Under its insurance agreements and its claims administration agreements with Health Benefit Plans, Cigna agreed to properly review and administer Medical Claims submitted by Plaintiff Snyder and members of the Non-ERISA Classes.  Accordingly, Plaintiff Snyder and members of the Non-ERISA Classes are legally entitled to a reasonable review of their Medical Claims.

170.     Rather than providing a reasonable review of Medical Claims, Cigna used the PXDX system to automatically deny Medical Claims submitted on behalf of Plaintiff Snyder and members of the Non-ERISA Classes.

171.     Cigna's conduct in using the PXDX system to automatically deny Medical Claims instead of performing a reasonable review of Medical Claims did not comply with the terms of the insurance policies under the Health Benefit Plans and/or the claims administration agreements entered into by Cigna with the Health Benefit Plans.  As such, and incorporating all of the other allegations made herein, Cigna is liable to Plaintiff Snyder for the conduct alleged in Counts II-VII below.

41

172.     Accordingly, pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, Plaintiff Snyder requests that the Court order Cigna to cease using the PXDX system to automatically deny Medical Claims.

173.     Plaintiff Snyder further requests, pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, that the Court order Cigna to re-process all Medical Claims that were automatically denied using the PXDX system.

<u>**COUNT II**</u>
**BREACH OF CONTRACT**
**(On behalf of Plaintiff Snyder and the Nationwide Non-ERISA Class,**
**or alternatively, on behalf of the Virginia Subclass)**

174.     Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

175.     Plaintiff Snyder brings this claim on behalf of herself and the Nationwide Non-ERISA Class, or alternatively, on behalf of herself and the Virginia Subclass.

176.     Cigna formed agreements and entered into contracts directly with insureds and/or with Health Benefit Plans, whereby it agreed to properly review and administer Medical Claims submitted by Plaintiff and members of the Non-ERISA Class.  As Cigna's insureds and beneficiaries of Health Benefit Plans that have contracted with Cigna to administer Medical Claims, Plaintiff and members of the Non-ERISA Class are Cigna's beneficiaries and intended beneficiaries to any contract Cigna entered into to provide claims administration services.

177.     At all times relevant herein, in exchange for Cigna providing insurance and/or claims administration services, Plaintiff Snyder and members of the Non-ERISA Class, or their employers as part of a Class member's compensation package, paid Cigna and performed all obligations they have to Cigna under relevant contracts.

178.    Upon information and belief, each insurance policy and/or claims administration agreement included either expressly or impliedly, without limitation, Cigna's duty to (i) exercise its fiduciary duties to insureds, including Plaintiff Snyder and members of the Non-ERISA Class; (ii) abide by applicable state and federal laws; (iii) provide a reasonable review of Medical Claims; (iv) refrain from wrongfully denying Medical Claims without a reasonable review; and (v) properly inform insureds prior to a claim denial.

179.    Each Cigna insurance policy expressly represented that benefits determinations would be made on the basis of medical necessity by medical directors or review organizations and would contemplate a variety of factors bearing on the health of the patient, generally accepted standards of medical practice, efficacy and economy.

180.    Cigna breached each insurance policy and claims administration agreement to which Plaintiff Snyder and Non-ERISA Class members were intended beneficiaries by, without limitation, failing to (i) keep its promise to fulfill its obligation to exercise its fiduciary duties to insureds; (ii) abide by applicable state and federal laws; (iii) have a medical director or review organization to provide a reasonable review of Medical Claims; and (iv) properly inform insureds prior to a claim denial and by automatically and wrongfully denying Medical Claims through the PXDX automatic claim denial system.

181.    As a result of Cigna's breaches, Plaintiff Snyder and members of the Non-ERISA Class have not received the benefit of their bargain and have experienced actual damages in the form of payment for insurance and claims administration services not rendered and/or payment for medically necessary tests and/or procedures that would have been otherwise covered by their Health Benefit Plans but for Cigna's conduct alleged herein, including its use of PXDX in Medical Claims reviews and denials.

182.   Plaintiff Snyder and members of the Non-ERISA Class, either as individuals who directly contracted with Cigna or as intended beneficiaries of Cigna's contracts with Health Benefit Plans, have not received the benefit of their bargain and have experienced, inter alia, a loss in value of their insurance policies.

183.   Cigna's conduct in permitting medical necessity reviews to be performed automatically by the PXDX automatic claim denial system and in a manner that did not comply with the terms of the insurance policies and/or claims administration agreements also constitutes a breach of the policies and/or claims administration agreements.

184.   Cigna's conduct in permitting medical necessity reviews to be performed automatically by the PXDX automatic claim denial system violated Virginia Code §32.1-137.8(E), which requires Cigna to have properly qualified review staff supported by a physician advisor to carry out its review determinations constituting a breach of the polices and/or claims agreements.

185.   Cigna's conduct in not making a good faith effort to obtain information from the provider before making an adverse determination of the medically necessary claim violated Virginia Code §32.1-137.13(B), constituting a breach of the polices and/or claims agreements.

186.   Cigna's bad faith refusal to make payment to the insureds under the policy is a violation of Virginia Code §38.2-209, and therefore, Plaintiff Snyder and members of the Non-ERISA Class seek costs and such reasonable attorney's fees as the Court may award.

187.   As a direct and proximate result of Cigna's breaches of contract, Plaintiff Snyder and members of the Non-ERISA Class have suffered actual damages and should be awarded any and all damages available at law in an amount to be proven at trial.

<u>**COUNT III**</u>
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiff Snyder and the Nationwide Non-ERISA Class,**
**or alternatively, on behalf of the Virginia Subclass)**

188.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

189.    Plaintiff Snyder brings this claim on behalf of herself and the Nationwide Non-ERISA Class, or alternatively, on behalf of herself and the Virginia Subclass.

190.    Plaintiff Snyder and members of the Non-ERISA Class entered into contracts with their Health Benefit Plans that assigned claims administration services to Cigna, with Plaintiff Snyder and members of the Non-ERISA Class as intended beneficiaries to receive the benefits of insurance coverage.  As such, Plaintiff Snyder and members of the non-ERISA Class are in contractual privity with Cigna.

191.    Cigna was assigned the sole discretionary authority to grant or deny benefits and to make benefit determinations in accordance with the terms of the Health Benefit Plans of Plaintiff Snyder and the Non-ERISA Class.  When Cigna exercises its discretionary authority to grant or deny insured benefits, it was bound by the implied covenant of good faith and fair dealing ensuring parties to contract and intended beneficiaries receive the benefit of their bargain.

192.    Cigna's duty of good faith and fair dealing obligated Cigna to consider Plaintiff Snyder's and members of the Non-ERISA Class's interests at least equal to their own interests and establish and maintain reasonable claims procedures for the initiation and processing of Medical Claims.

193.    Pursuant to those insurance contracts and/or claims administration agreements, in exchange for insureds' premium payments and/or payments for claims administration services, Cigna implied and covenanted that it would act in good faith and follow the law and the contracts

with respect to a reasonable review of Plaintiff Snyder's and the Non-ERISA Class's medical claims and the prompt and fair payment of those claims.

194.    Cigna has breached its duty of good faith and fair dealing by, among other things: (i) improperly delegating its Medical Claims review function to the PXDX automatic denial system, which uses an automated process to improperly deny Medical Claims; (ii) allowing their medical directors to sign off on the PXDX denials in batches, without individually reviewing each patient's file and claim; (iii) failing to have their medical directors conduct a thorough, fair, and objective review, analysis, and investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims and to avoid unfair denials; and (iv) mechanically, on a wholesale basis, and in bad faith asserting its contractual right to deny claims in the expectation that many wrongly-denied claimants would pay for lower-cost treatments out-of-pocket rather than submit to complex and time-consuming appeal procedures.

195.    Cigna's practices as described herein violated their duties to Plaintiff Snyder and members of the Non-ERISA Class under the insurance contracts and/or claims administration agreements of which Plaintiff Snyder and Non-ERISA Class members were intended beneficiaries.

196.    Cigna's practices as described herein constitute an unreasonable denial of Plaintiff Snyder's and members of the Non-ERISA Class's rights to a thorough, fair, and objective review, analysis, and investigation of each of their Medical Claims by a doctor and breach the implied covenant of good faith and fair dealing arising from Cigna's insurance contracts and/or claims administration agreements of which Plaintiff Snyder and members of the Non-ERISA Class were intended beneficiaries.

197.   Cigna's practices as described herein further constitute an unreasonable denial to pay benefits due to Plaintiff Snyder and members of the Non-ERISA Class in breach of the implied covenant of good faith and fair dealing arising from Cigna's insurance contracts and/or claims administration agreements of which Plaintiff Snyder and Non-ERISA Class members were intended beneficiaries.

198.   As a result of Cigna's wrongful conduct, Plaintiff Snyder and members of the Non-ERISA Class have not received the benefit of their bargain and have experienced actual damages in the form of payment for insurance and claims administration services not rendered and/or payment for medically necessary tests and/or procedures that would have been otherwise covered by their Health Benefit Plans but for Cigna's conduct alleged herein, including its use of PXDX in Medical Claims reviews and denials.

199.   Cigna's wrongful denial of Plaintiff Snyder's and members of the Non-ERISA Class's right to a thorough, fair, and objective review, analysis, and investigation of their Medical Claims and Cigna's wrongful automatic denial of Medical Claims damaged Plaintiff Snyder and members of the Non-ERISA Class.  Plaintiff Snyder and the members of the Non-ERISA Class have not received the benefit of their bargain and experienced a loss in value of their insurance policies.

200.   As a direct and proximate result of Cigna's breaches, Plaintiff Snyder and members of the Non-ERISA Class have suffered, and will continue to suffer in the future, economic losses, including, but not limited to, denial of their benefit of their bargain, overpayment for their Health Benefit Plans, denial of the benefits owed under their Health Benefit Plans, out of pocket expenses for medical services that should have been covered under their Health Benefit Plans, and other general, incidental, and consequential damages, in amounts that will be determined at trial.

Plaintiff Snyder and members of the Non-ERISA Class also seek actual damages in an amount to be proven at trial.  Plaintiff Snyder and members of the Non-ERISA Class also seek statutory and pre- and post- judgment interest against Cigna.

201.    Cigna's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, and therefore Plaintiff and members of the Non-ERISA Class seek punitive damages against Cigna in an amount to be proven at trial.

202.    Cigna's bad faith refusal to make payment to the insureds under the policy is a violation of Virginia Code §38.2-209, and therefore, Plaintiff Snyder and members of the Non-ERISA Class seek costs and such reasonable attorney's fees as the Court may award.

203.    By reason of Cigna's conduct alleged herein, Plaintiff Snyder has necessarily retained attorneys to prosecute the present action.  Plaintiff Snyder therefore seeks reasonable attorneys' fees and litigation expenses, including expert witness fees and costs incurred in bringing this action on behalf of herself and the Non-ERISA Class.

**<u>COUNT IV</u>**
**BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiff Snyder and the Nationwide Non-ERISA Class,**
**or alternatively, on behalf of the D.C. Subclass and the Virginia Subclass)**

204.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

205.    Plaintiff Snyder brings this claim on behalf of herself and the Nationwide Non-ERISA Class, or alternatively, on behalf of herself and the D.C. and Virginia Subclasses.

206.    Plaintiff Snyder and members of the Non-ERISA Class entered into contracts with their Health Benefit Plans that assigned claims administration services to Cigna, with Plaintiff Snyder and members of the Non-ERISA Class as intended beneficiaries to receive the benefits of insurance coverage.

207.    Cigna was assigned the sole discretionary authority to grant or deny benefits and to make benefit determinations in accordance with the terms of the Health Benefit Plans of Plaintiff Snyder and the Non-ERISA Class.  Through these contracts and/or Cigna's associated agreements with the Health Benefit Plans, Cigna owes a fiduciary duty to Plaintiffs and members of the Non-ERISA Class.  When Cigna exercises its discretionary authority to grant or deny insured benefits, it is bound by that fiduciary duty to ensure that the parties to contract and the intended beneficiaries receive the benefit of their bargain.

208.    Cigna's fiduciary duty obligated Cigna to consider Plaintiff Snyder's and members of the Non-ERISA Class's interests at least equal to their own interests and to establish and maintain reasonable claims procedures for the initiation and processing of Medical Claims.

209.    Pursuant to the insurance contracts and/or claims administration agreements, in exchange for insureds' premium payments and/or payments for claims administration services, Cigna implied and covenanted that it would prioritize Plaintiff Snyder's and members of the Non-ERISA Class's interests, follow the law, and perform as promised in the contracts with respect to a reasonable review of Plaintiff Snyder's and the Non-ERISA Class's medical claims and the prompt and fair payment of those claims.

210.    Cigna has breached its fiduciary duty by, among other things: (i) improperly delegating its Medical Claims review function to the PXDX automatic denial system, which uses an automated process to improperly deny Medical Claims; (ii) allowing their medical directors to sign off on the PXDX denials in batches, without individually reviewing each patient's file and claim; (iii) failing to have their medical directors conduct a thorough, fair, and objective review, analysis, and investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims and to

avoid unfair denials; and (iv) mechanically, on a wholesale basis, and in bad faith asserting its contractual right to deny claims in the expectation that many wrongly-denied claimants would pay for lower-cost treatments out-of-pocket rather than submit to complex and time-consuming appeal procedures.

211.    Cigna's practices as described herein violated their fiduciary duties to Plaintiff Snyder and members of the Non-ERISA Class under the insurance contracts and/or claims administration agreements of which Plaintiff Snyder and Non-ERISA Class members were intended beneficiaries.

212.    Cigna's practices as described herein constitute an unreasonable denial of Plaintiff Snyder's and members of the Non-ERISA Class's rights to a thorough, fair, and objective review, analysis, and investigation of each of their Medical Claims by a doctor and breach the fiduciary duties arising from Cigna's insurance contracts and/or claims administration agreements of which Plaintiff Snyder and members of the Non-ERISA Class were intended beneficiaries.

213.    Cigna's practices as described herein further constitute an unreasonable denial to pay benefits due to Plaintiff Snyder and members of the Non-ERISA Class in breach of the fiduciary duties arising from Cigna's insurance contracts and/or claims administration agreements of which Plaintiffs and Non-ERISA Class members were intended beneficiaries.

214.    As a result of Cigna's wrongful conduct, Plaintiff Snyder and members of the Non-ERISA Class have not received the benefit of their bargain and have experienced actual damages in the form of payment for insurance and claims administration services not rendered and/or payment for medically necessary tests and/or procedures that would have been otherwise covered by their Health Benefit Plans but for Cigna's conduct alleged herein, including its use of PXDX in Medical Claims reviews and denials.

215.    Cigna's wrongful denial of Plaintiff Snyder's and members of the Non-ERISA Class's right to a thorough, fair, and objective review, analysis, and investigation of their Medical Claims and Cigna's wrongful automatic denial of Medical Claims damaged Plaintiff Snyder and members of the Non-ERISA Class.  Plaintiff Snyder and the members of the Non-ERISA Class have not received the benefit of their bargain and experienced a loss in value of their insurance policies.

216.    As a direct and proximate result of Cigna's breaches, Plaintiff Snyder and members of the Non-ERISA Class have suffered, and will continue to suffer in the future, economic losses, including, but not limited to, denial of their benefit of their bargain, overpayment for their Health Benefit Plans, denial of the benefits owed under their Health Benefit Plans, out of pocket expenses for medical services that should have been covered under their Health Benefit Plans, and other general, incidental, and consequential damages, in amounts that will be determined at trial. Plaintiff Snyder and members of the Non-ERISA Class also seek actual damages in an amount to be proven at trial.  Plaintiff Snyder and members of the Non-ERISA Class also seek statutory and pre- and post- judgment interest against Cigna.

217.    Cigna's misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, and therefore Plaintiff Snyder and members of the Non-ERISA Class seek punitive damages against Cigna in an amount to be proven at trial.

218.    By reason of Cigna's conduct alleged herein, Plaintiff Snyder has necessarily retained attorneys to prosecute the present action.  Plaintiff Snyder therefore seeks reasonable attorneys' fees and litigation expenses, including expert witness fees and costs incurred in bringing this action on behalf of herself and the Non-ERISA Class.

<u>COUNT V</u>
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(On behalf of Plaintiff Snyder and the Nationwide Non-ERISA Class,**
**or alternatively, on behalf of the Virginia Subclass)**

219.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

220.    Plaintiff Snyder brings this claim on behalf of herself and the Nationwide Non-ERISA Class, or alternatively, on behalf of herself and the Virginia Subclass.

221.    Plaintiff Snyder and members of the Non-ERISA Class entered into written contracts whereby Health Benefit Plans administered by Cigna were required to perform a reasonable review of claims submitted and pay for Plaintiff's and members of the Non-ERISA Class's medically necessary services rendered by healthcare providers.

222.    Cigna was aware of the fact that Plaintiff Snyder and members of the Non-ERISA Class had entered into these contractual relationships, under which Health Benefit Plans were required to perform a reasonable review of claims submitted and authorize payments for medically necessary services rendered by healthcare providers to Plaintiff Snyder and members of the Class.

223.    Cigna knew and understood that Plaintiff Snyder and members of the Non-ERISA Class, by enrolling in Health Benefit Plans administered by Cigna had the reasonable expectation that their claims would be subject to a reasonable review and that medically necessary expenses would be covered by the Health Benefit Plans.

224.    Cigna, other the other hand, entered into agreements with the Health Benefit Plans to provide claims administration services whereby it had legal obligations, and contractual promises, to meaningfully review Medical Claims before making coverage determinations. Cigna's conduct in permitting medical necessity reviews to be performed automatically by the PXDX algorithm constitutes a breach of those agreements.

225. By engaging in its scheme to automatically review claims through the use of PXDX, instead of employing a reasonable review process, and by automatically and systemically reviewing and denying Plaintiff Snyder's and members of the Non-ERISA Class's claims by using PXDX, Cigna intentionally disrupted and interfered with the Health Benefit Plans' performance of their contracts with Plaintiff Snyder and members of the non-ERISA Class.

226. Cigna knew this disruption and interference with the performance of Plaintiff Snyder's and members of the Non-ERISA Class's contracts was certain or substantially certain to occur when it engaged in a scheme to automatically review claims through the use of PXDX, instead of employing a reasonable review process, and when it automatically and systemically reviewed and denied Plaintiff Snyder and members of the Non-ERISA Class's claims by using PXDX, and deemed services not medically necessary, without any basis.

227. As a direct and proximate result of Cigna's scheme to automatically review claims through the use of PXDX, instead of employing a reasonable review process, and its automatic and systemic denial of Plaintiff Snyder and members of the Non-ERISA Class's claims by using PXDX, and the resulting interference with the contracts between Plaintiff Snyder and members of the Non-ERISA Class and their Health Benefit Plans, Plaintiff Snyder and members of the Non-ERISA Class were damaged.

228. Had Cigna disclosed that it does not provide a reasonable analysis of claims and instead, automatically reviews and denies claims by using PXDX, Plaintiff Snyder and the members of the Non-ERISA Class would not have contracted for insurance under their Health Benefit Plans or would not have paid as much for those benefits.

## COUNT VI
## UNJUST ENRICHMENT
### (On behalf of Plaintiff Snyder and the Nationwide Non-ERISA Class, or alternatively, on behalf of the D.C. and Virginia Subclasses)

229.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

230.    Plaintiff Snyder brings this claim on behalf of herself and the Nationwide Non-ERISA Class, or alternatively, on behalf of herself and the D.C. and Virginia Subclasses.

231.    By delegating the claims review process to the automated PXDX claims denial system, Cigna wrongfully and consciously received ill-gotten profits in the form of monies saved by failing to deliver a legally entitled and promised review of Plaintiff Snyder's and members of the Non-ERISA Class's medical claims, as well as received ill-gotten profits in the form of monies saved by denying Plaintiff Snyder's and members of the Non-ERISA Class's otherwise meritorious medical claims.  This was done in a manner that was unfair, unconscionable, and oppressive.

232.    Cigna knowingly received and retained these ill-gotten profits from Plaintiff Snyder and members of the Non-ERISA Class.  In so doing, Cigna acted with conscious disregard for the rights of Plaintiff Snyder and members of the Class.

233.    As a result of Cigna's wrongful conduct as alleged herein, Cigna has been unjustly enriched at the expense of, and to the detriment of, Plaintiff Snyder and members of the Non-ERISA Class.

234.    Cigna's unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein.

235.    Under the common law doctrine of unjust enrichment, it is inequitable for Cigna to be permitted to retain the benefits they received (without justification) by automatically reviewing

and denying Plaintiff Snyder's and members of the Non-ERISA Class's claims in an unfair, unconscionable, and oppressive manner.  Cigna's retention of savings attributable to its conduct under such circumstances makes it inequitable for Cigna to retain the resulting ill-gotten profits and constitutes unjust enrichment.

236.    The financial benefits derived by Cigna rightfully belong to Plaintiff Snyder and members of the Non-ERISA Class.  Cigna should be compelled to disgorge, in a common fund for the benefit of Plaintiff Snyder and members of the Non-ERISA Class, all of Cigna's ill-gotten financial gains attributable to its savings from the conduct alleged herein.

**COUNT VII**
**VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION**
**PROCEDURES ACT ("D.C. CPPA")**
**(D.C. Code § 28-3901, *et seq.*)**
**(On behalf of Plaintiff Snyder and the D.C. Subclass)**

237.    Plaintiff Snyder hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

238.    Plaintiff Snyder brings this claim on behalf of herself and the members of the D.C. Subclass.

239.    Plaintiff Snyder, members of the D.C. Subclass, and Defendants are "persons" as defined by D.C. Code §28-3901(a)(1).

240.    Plaintiff Snyder and members of the D.C. Subclass are "consumers" as defined by D.C. Code §28-3901(a)(2)(A).

241.    Defendants are "merchants" as defined by D.C. Code § 28-3901(a)(3).

242.    The claims administration services offered by Cigna to Plaintiff Snyder and members of the D.C. Subclass were for personal, family, or household purposes and are "goods and services" as defined by D.C. Code §28-3901(a)(7).

243.    Cigna's use of the claims administration services is a "trade practice" as defined by D.C. Code §28-3901(a)(7).

244.    The District of Columbia Consumer Protection Procedures Act ("D.C. CPPA") provides that "It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:" (1) "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;" (2) "misrepresent as to a material fact which has a tendency to mislead;" (3) "fail to state a material fact if such failure tends to mislead;" or (4) "use innuendo or ambiguity as to a material fact, which has a tendency to mislead." D.C. Code §28-3904(a), (e), (f), and (f-1).

245.    Defendants violated the  D.C. CPPA, D.C. Code §28-3904, by *inter alia*: (1) "represent[ing] that [their claims administration services] have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;" (2) "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;" (3) misrepresent[ing] as to a material fact which has a tendency to mislead; and (4) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered[.]"

246.    In the course of its business, Cigna misrepresented its insurance and claims administration services and willfully failed to disclose and actively concealed the fact that it does not provide a reasonable analysis of claims submitted by patients under Health Benefit Plans and instead, automatically reviews and denies claims pursuant to the PXDX automatic denial system, Cigna also engaged in activities with a tendency or capacity to deceive as alleged herein.  Cigna further engaged in unlawful trade practices by employing deception, deceptive acts or practices,

56

fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission by misrepresenting its insurance and claims administration services and omitting and concealing that instead of reviewing claims, it employs the PXDX algorithm to automatically deny claims under Health Benefit Plans.

247.   Cigna's misrepresentation of its insurance and claims administration services and its nondisclosure and concealment of the fact that it does not provide a reasonable analysis of patient-submitted claims were deceptive trade practices under D.C. Code §28-3904.

248.   Defendants acted willfully in engaging in trade practices, knowing they are deceptive, by employing the PXDX automatic denial system in violation of its public representations regarding claims processing and its own agreements.

249.   In violation of the D.C. CPPA, Cigna employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of insurance policies and/or claims administration services.  Cigna knowingly concealed, suppressed, and/or omitted material facts regarding their insurance policies and/or claims administration services, which directly caused harm to Plaintiff Snyder and the D.C. Subclass.

250.   Cigna's unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Snyder and members of the D.C. Subclass had no reasonable way to know that Cigna was not providing a reasonable review of their claims for coverage of medical tests and procedures and instead, was employing and continues to employ the PXDX automatic denial system to automatically deny claims under Health Benefit Plans.

251.    Cigna possessed superior knowledge as to the quality and characteristics of its claims review process and its use of PXDX.  Any reasonable consumer would have relied on Cigna's misrepresentations, concealment, and/or omissions, as Plaintiff Snyder and members of the D.C. Subclass did.

252.    Cigna intentionally and knowingly misrepresented, concealed, and/or omitted material facts regarding their claims review process and use of PXDX.

253.    Cigna's unfair and deceptive acts or practices and/or material misrepresentations and/or omissions regarding their claims review process and use of PXDX were intended to mislead consumers and misled Plaintiff Snyder and D.C. Subclass members.

254.    At all relevant times, Cigna's unfair and deceptive acts or practices, and/or misrepresentations and/or omissions regarding their claims review process and use of PXDX were material to Plaintiff Snyder and D.C. Subclass members.

255.    When Plaintiff Snyder and D.C. Subclass members obtained insurance through Health Benefit Plans, they reasonably relied on the reasonable expectation that Cigna would provide a proper review of their claims and would not automatically deny claims based on use of an automatic denial system, like PXDX.  Had Cigna disclosed that it does not provide a reasonable review of claims and instead, automatically denies claims by using PXDX, Plaintiff Snyder and members of the D.C. Subclass would not have contracted for insurance under their Health Benefit Plans or would not have paid as much for those benefits.

256.    Cigna's unfair and deceptive acts or practices and/or material misrepresentations and/or omissions regarding its claims, insurance coverage and services, including its claims review process and use of PXDX, are substantially injurious to consumers.  As a result of Cigna's deceptive acts and practices and knowing, intentional misrepresentations, concealment and/or

omission of the fact that it does not provide a reasonable review of claims and instead automatically reviews and denies claims by using PXDX, in violation of the D.C. CPPA, Plaintiff Snyder and members of the D.C. Subclass have suffered harm and continue to suffer harm.

257.    Cigna has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Cigna's deceptive acts or practices occurred in the conduct of trade or commerce.  Cigna knew or should have known that its unlawful conduct violated the VCPA.

258.    Cigna's unlawful acts and practices affect the public interest, and trade and commerce in the District of Columbia.

259.    As a direct and proximate result of Cigna's violations of the VCPA, Plaintiff Snyder and members of the D.C. Subclass have suffered actual damages and/or injury in fact.

260.    Plaintiff Snyder and members of the D.C. Subclass are consumers seeking relief from the use of a trade practice in violation of the law of the District, and are entitled to: (1) an injunction against the use of Defendants' unlawful trade practices; (2) attorneys' fees reasonably incurred, (3) punitive damages, (4) treble damages, or $1,500 per violation, whichever is greater, (5) additional relief as may be necessary to restore to the Sub-Class members money or property acquired by means of the unlawful trade practice, and (6) any other relief which the Court determines proper.. *See* D.C. Code §28-3905(k).

### COUNT VIII
### VIOLATIONS OF ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B)
### (Against All Defendants on Behalf of Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class)

261.    Plaintiffs Wingo, Whitney, and Schultz incorporate by reference the preceding paragraphs in sections I-VI as though such paragraphs were fully stated herein.

262.     This count is brought pursuant to 29 U.S.C. §1132(a)(1)(B), which provides that a participant or beneficiary may bring an action to enforce rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan.

263.     Each ERISA Health Benefit Plan Cigna offers or administers expressly states that the claims determination procedures that Cigna employs comply with federal law and that its adverse determination notices denying claims provide, among other things, the specific reasons for the adverse determination and a copy of any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination.  As discussed herein, the claims determination procedure Cigna employs does not comply with federal law, specifically ERISA, and the adverse determination notices Cigna sends to Plaintiffs and ERISA Class members do not disclose that their claims were automatically denied, and continue to be denied, *en masse* solely through Cigna's use of PXDX.

264.     Each ERISA Health Benefit Plan Cigna offers or administers also expressly represents that Cigna will make benefits determinations on the basis of medical necessity by medical directors or review organizations and would contemplate a variety of factors bearing on the health of the patient, generally accepted standards of medical practice, efficacy and economy.

265.     Cigna denied, and continues to deny, the claims for medically necessary treatment submitted on behalf of Plaintiffs Wingo, Whitney, and Schultz, and other members of the ERISA Class in violation of the terms of Plaintiffs Wingo, Whitney, and Schultz's Health Benefit Plan and the Health Benefit Plans that insure members of the ERISA Class.  Cigna denied these claims based on Cigna's PXDX automatic denial system.  Cigna also denied, and continues to deny, these claims, in part, based on its systematic practice of (i) automatic claim denial; (ii) claim processing quota or standards; and (iii) relying upon its deficient process even though the standards used are

not a recognized basis for denying claims under Plaintiffs Wingo, Whitney, and Schultz's and the ERISA Class Health Benefit Plans.

266.    Moreover, by secretly delegating its claims determination process to an automated claims denial system, Cigna maintained, and continues to maintain, unreasonable claims procedures that were not and are not described in its plans' summary plan descriptions, 29 C.F.R. §2560-503-1(b)(2), inhibited or hampered, and continues to inhibit or hamper, the processing of valid claims under the ERISA Health Benefit Plans, *id.*, §2560-503-1(b)(3), did not and do not "contain administrative processes and safeguards designed to ensure and to verify that benefit claims determinations are made in accordance with governing plan documents," *id.*, §2560-503-1(b)(5), did not identify or offer to identify, and continue to not identify or offer to identify, that PXDX was the "internal rule, guideline, protocol, or other similar criterion [that] was relied upon in making [an] adverse determination," *id.*, §2560-503-1(g)(1)(v)(A), and did not explain or offer to explain, and continue to not explain or offer to explain, that PXDX is the purported scientific or clinical judgment supporting Cigna's adverse determinations made on the basis of its use of PXDX, *id.*, §2560-503-1(g)(1)(v)(B).

267.    Because Cigna failed to provide a reasonable claims procedure that would yield decisions on the merits of their claims, Plaintiffs Wingo, Whitney, and Schultz are deemed to have exhausted administrative remedies under 29 C.F.R. §2560.503-1(l).

268.    Plaintiffs Wingo, Whitney, and Schultz and the members of the ERISA Class have been harmed by Cigna's improper benefit denials because they were and likely will continue to be deprived of insurance benefits that they were owed.

269.    Plaintiffs Wingo, Whitney, and Schultz and the members of the ERISA Class have been damaged in the amount of Cigna's improper benefit denials as well as any amounts they paid

out of pocket to cover the costs of medically necessary services subject to Cigna's improper benefit denials, which Plaintiffs and the ERISA Class are entitled to recover.

270.   Plaintiffs Wingo, Whitney, and Schultz and members of the ERISA Class are entitled to enforce their rights under the terms of the ERISA Health Benefits Plans and seek clarification of their future rights and are entitled to an order providing, among other things:

a.   That they have been subject to improper benefit denials by Cigna;

b.   For an accounting of Cigna's improper benefit denials;

c.   For payment of all amounts due them in accordance with their rights under the ERISA Health Benefits Plans; and

d.   That they are entitled in the future to not be subject to improper benefit denials by Cigna through the use of PXDX.

271.   Plaintiffs Wingo, Whitney, and Schultz and the members of the ERISA Class are further entitled to attorney's fees, and any other just and proper relief available under 29 U.S.C. §1132(a)(1)(B).

## COUNT IX
### ERISA §502(a)(2) and (3), 29 U.S.C. §1132(a)(2) and (3) FOR VIOLATIONS OF ERISA §404, 29 U.S.C. §1104
### (Against All Defendants on Behalf of Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class)

272.   Plaintiffs Wingo, Whitney, and Schultz hereby incorporate by reference the preceding paragraphs in Sections I-VI as if they were fully set forth herein.

273.   ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence

under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

274.     Cigna offers or administers ERISA Health Benefit Plans that pay all or a portion of "covered expenses."   Each ERISA Health Benefit Plan provides that "covered expenses" are expenses incurred by a person while covered under a plan for the charges for services or supplies that are medically necessary, *as determined by Cigna*.   As the entity responsible for making insurance coverage and benefit determinations under Plaintiffs Wingo, Whitney, and Schultz's and ERISA Class members' Health Benefit Plans, and for developing internal practices and policies to facilitate such determinations, each Defendant is an ERISA fiduciary.

275.     Cigna breached and continues to breach the terms of the ERISA Health Benefit Plans and legal obligations, committed and continues to commit breaches of fiduciary duties, and was and continues to be unjustly enriched in doing so thereby harming Plaintiffs Wingo, Whitney, and Schultz and ERISA Class members:

(a)     improperly delegating its claims determination function to the PXDX system, which uses an automated process to unreasonably and wrongly deny claims;

(b)     improperly allowing its medical directors to sign off on the denials without individually reviewing each patient's file;

(c)     failing to have its medical directors conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials;

(d)     maximizing its own profits, profits to its affiliates, and profits to third parties, at the expense of the ERISA Class members;

(e)     failing to monitor its appointees, formal delegates, and informal designees in the performance of their fiduciary duties;

(f)     failing to describe in its summary plan descriptions the role that PXDX plays in the claims determination process;

(g)     failing to maintain administrative processes and safeguards designed to ensure that claim determinations are made in accordance with governing plan documents (which require, among other things, that questions of medical necessity be determined by medical directors or "Review Organizations" staffed by clinicians and other trained staff members who perform utilization review services);

(h)     failing to state or offer to state in notices of adverse determinations that it relied on an internal rule, guideline, protocol, or other similar criterion – specifically, on an automated system, PXDX – in reaching its determinations; and

(i)     failing to explain or offer to explain in notices of adverse determinations that the only clinical or scientific judgment supporting its denials were exercised by an automated system grouping claims for determination without review by diagnosis codes.

276.    Additionally, by secretly delegating its claims determination process to an automated claims denial system, Cigna maintained, and continues to maintain, unreasonable claims procedures.  These procedures, among other things, were not and are not described in Cigna's summary plan descriptions, 29 C.F.R. §2560-503-1(b)(2), inhibited or hampered, and continues to inhibit or hamper, the processing of valid claims under the ERISA Health Benefit Plans, *id*., §2560-503-1(b)(3), did not and do not "contain administrative processes and safeguards designed to ensure and to verify that benefit claims determinations are made in accordance with governing plan documents," *id*., §2560-503-1(b)(5), did not identify or offer to identify, and

continue to not identify or offer to identify that PXDX was the "internal rule, guideline, protocol, or other similar criterion [that] was relied upon in making [an] adverse determination," *id*., §2560-503-1(g)(1)(v)(A), and did not explain or offer to explain, and continue not to explain or offer to explain no scientific or clinical judgment supports Cigna's adverse determinations made on its use of PXDX, *id*., §2560-503-1(g)(1)(v)(B).

277. Because Cigna failed to maintain reasonable claims procedures, Plaintiffs Wingo, Whitney, and Schultz's and the ERISA Class's claims were summarily denied. For as long as Cigna has used PXDX to deny claims, and for so long as Cigna continues to use PXDX to deny claims, Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class have been harmed and are likely to be harmed in the future by Cigna's summary denial of their claims.

278. Cigna violated its duty by failing to act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." It did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity. It did not act in accordance with the terms of Plaintiffs Wingo, Whitney, and Schultz's and the ERISA Class's Health Benefit Plans. Instead, Cigna elevated its own interests and those of its corporate affiliates above the interests of plan participants and beneficiaries, such as Plaintiffs Wingo, Whitney, and Schultz's and the ERISA Class. By implementing a deficient claims determination process, Cigna artificially decreased the number and value of covered claims thereby benefiting its corporate affiliates at the expense of insureds.

279. Instead of ensuring that a reasonable claims procedure was employed, Cigna mechanically, on a wholesale basis, and in bad faith summarily denied claims for large categories of treatments. Cigna denied these claims in the expectation that many wrongly denied claimants

would pay for lower-cost treatments out of pocket rather than submit to complex and time-consuming appeal procedures.

280.    Additionally, by engaging in this misconduct, Cigna allowed itself to be unjustly enriched insofar as they were not required to pay benefit claims.  Cigna's breach of fiduciary duties is underscored by the fact that it also ignored federal laws requiring it to apply generally accepted standards of care when making medical necessity determinations.

281.    ERISA §409, 29 U.S.C. §1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets.  ERISA §409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

282.    ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA §409.

283.    ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

284.    Plaintiffs Wingo, Whitney, and Schultz and the members of the ERISA Class have been harmed, and will continue to be harmed, by Defendant's breach of fiduciary duty because its claims have been subjected to Cigna's PXDX automatic claim denial system, making it less likely that Cigna will determine that their claims are covered.

285. Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), the Court should order equitable relief to Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class these harms, including but not limited to:

    (a) an accounting;

    (b) a surcharge;

    (c) reprocessing of the claims;

    (d) disgorgement;

    (e) an equitable lien;

    (f) a constructive trust;

    (g) restitution;

    (h) full disclosure of the foregoing acts and practices;

    (i) an injunction against further violations;

    (j) attorney's fees and costs; and/or

    (j) any other remedy the Court deems proper.

**COUNT X**
**ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) FOR VIOLATIONS OF**
**ERISA §405(a), 29 U.S.C. §1105(a)**
**(Against All Defendants on Behalf of Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class)**

286. Plaintiffs Wingo, Whitney, and Schultz incorporate by reference the preceding paragraphs in Section I-VI as though such paragraphs were fully stated herein.

287. Defendants were fiduciaries within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A). Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence and they were prohibited from engaging in self-interested and conflicted transactions.

288.     ERISA §405(a), 29 U.S.C. §1105(a), imposes liability on a fiduciary, in addition to any liability which it may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if it knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  Defendants breached all three provisions.

289.     **Knowledge of a Breach and Failure to Remedy.**  ERISA §405(a)(3), 29 U.S.C. §1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if it has knowledge of a breach by such other fiduciary, unless it makes reasonable efforts under the circumstances to remedy the breach.  Upon information and belief, each Defendant knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

290.     **Knowing Participation in a Breach.**  ERISA §405(a)(1), 29 U.S.C. §1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if it participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.  Upon information and belief, each Defendant participated in the breaches by the other fiduciaries.

291.     **Enabling a Breach.**  ERISA §405(a)(2), 29 U.S.C. §1105(a)(2), imposes liability on a fiduciary if, by failing to comply with ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of its specific responsibilities which give rise to its status as a fiduciary, it has enabled another fiduciary to commit a breach, even without knowledge of the breach.  Upon information and belief, each Defendant enabled the breaches by the other fiduciaries.

292.     Plaintiffs Wingo, Whitney, and Schultz and the members of the ERISA Class have been denied, and will continue to be denied, the reasonable claims procedure to which they are entitled under ERISA and the ERISA Health Benefit Plans, resulting in wrongful claims denials,

and some have paid, and will continue to pay, out of pocket to cover the costs of medically necessary services subject to Cigna's unreasonable and wrongful benefit denials.  Further, many have been forced to submit to a lengthy appeal procedure where they were entitled to a reasonable claims determination process in the first instance.

293.   Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), the Court should order equitable relief to Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class to remedy these harms, including but not limited to:

   (a) an accounting;

   (b) a surcharge;

   (c) reprocessing of the claims;

   (d) disgorgement;

   (e) an equitable lien;

   (f) a constructive trust;

   (g) restitution;

   (h) full disclosure of the foregoing acts and practices;

   (i) an injunction against further violations;

   (j) attorney's fees and costs; and/or

   (j) any other remedy the Court deems proper.

**COUNT XI**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), FOR KNOWING PARTICIPATION IN VIOLATIONS OF ERISA**
**(Brought in the Alternative, Against All Defendants on Behalf of Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class)**

294.   Plaintiffs Wingo, Whitney, and Schultz incorporate by reference the preceding paragraphs in Sections I-VI as though such paragraphs were fully stated herein.

295.    Plaintiffs Wingo, Whitney, and Schultz bring this count in the alternative to the foregoing claims under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3).  Fiduciary status is not required for liability under ERISA where non-fiduciaries participate in and/or profit from a fiduciary's breach or prohibited transaction.  Accordingly, Plaintiffs make claims against Defendants even though one or more of them may be found not to have fiduciary status with respect to the ERISA Plans.  As nonfiduciaries, they nevertheless must restore unjust profits or fees and are subject to other appropriate equitable relief, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), and pursuant to *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc*., 530 U.S. 238 (2000).

296.    To the extent any one or more of them are not found to be fiduciaries, Defendants had actual or constructive knowledge of and participated in and/or profited from the prohibited transactions and fiduciary breaches alleged in Counts IX-X by the Defendants who are found to be fiduciaries, and these nonfiduciaries are liable to disgorge ill-gotten gains and/or plan assets and to provide other appropriate equitable relief, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), and *Harris Trust*.

297.    As a direct and proximate result of the fiduciary breaches and prohibited transactions alleged in Counts IX-X and the participation therein of the Defendants, the members of the ERISA Class directly or indirectly lost millions of dollars and/or plan assets (both participant payments and Plan contracts) were improperly used to generate profits for the fiduciary Defendants, their affiliates, and third parties.  The fiduciary Defendants collected and/or paid these amounts to themselves, their affiliates, or third parties from plan assets or generated them through improper leveraging of plan assets.

298.     Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), the Court should order equitable relief to Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class to remedy these harms, including but not limited to:

(a) an accounting;

(b) a surcharge;

(c) reprocessing of the claims;

(d) disgorgement;

(e) an equitable lien;

(f) a constructive trust;

(g) restitution;

(h) full disclosure of the foregoing acts and practices;

(i) an injunction against further violations;

(j) attorney's fees and costs; and/or

(j) any other remedy the Court deems proper.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, respectfully demand judgment in their favor against Defendants as follows:

A.     Certifying this action as a class action;

B.     Appointing Plaintiffs as Class Representatives for the Classes;

C.     Appointing undersigned counsel as Class Counsel for the Classes;

D.     Issuing a permanent injunction ordering Cigna to stop utilizing the PXDX automatic denial system complained of herein, and instead to adopt or develop a medical claims determination system that is consistent with those that are generally accepted and in compliance with the requirements of applicable state law;

E.      Declaration that Cigna's denials of coverage were improper, unreasonable, and wrongful and developed in violation of law, including Defendants' fiduciary duties;

F.      Order Cigna to reprocess claims for coverage that it previously denied (in whole or in part) pursuant to a new process that is consistent with those that are generally accepted and in compliance with the requirements of applicable state and federal law;

G.      Order Cigna to faithfully apply its claims determination procedure (including any new processes Cigna may adopt or promulgate in response to the relief sought herein) in reprocessing claims for coverage that it previously denied (in whole or in part), and in processing future claims for coverage;

H.      Order enjoining Cigna from continuing their unlawful conduct;

I.      Award all damages to which Plaintiff Snyder and members of the Non-ERISA Class are entitled;

J.      Finding Cigna engaged in bad faith refusal to make payment to the insureds under the policy in violation of Virginia Code §38.2-209, and awarding Plaintiff Snyder and members of the Non-ERISA Class costs and reasonable attorney's fees;

K.      Finding that Cigna is a fiduciary and/or a party in interest as defined by ERISA;

L.      Finding that Cigna violated its fiduciary duties to Class members and awarding Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class such relief as the Court deems proper;

M.      Finding that Cigna denied Plaintiffs and the Classes benefits and their rights under the policies and awarding such relief as the Court deems proper;

N.      Order for an accounting of Cigna's improper, unreasonable, and wrongful benefit denials and for payment of all amounts due Plaintiffs Wingo, Whitney, and Schultz and the ERISA Class in accordance with their rights under the ERISA Health Benefit Plans;

O.      Award of surcharge to Plaintiffs Wingo, Whitney, and Schultz and members of the

ERISA Class in an amount equivalent to the revenue it generated from its corporate affiliates or

the plans with respect to claims filed by Plaintiffs Wingo, Whitney, and Schultz and members of

the ERISA Class, expenses that Defendants' corporate affiliates saved due to Defendants' wrongful

denials, the out-of-pocket costs for covered treatment that Plaintiffs Wingo, Whitney, and Schultz

and members of the ERISA Class incurred following Cigna's wrongful denials, and/or pre-

judgment and post-judgment interest;

P.      Order for an equitable lien, a constructive trust, disgorgement, restitution, and/or

full disclosure of the foregoing acts and practices to Plaintiffs Wingo, Whitney, and Schultz and

the ERISA Class;

Q.      Award of disbursements and expenses for this action, including reasonable

attorneys' fees, in amounts to be determined by the Court, pursuant to 29 U.S.C. §1132(g);

R.      Award of statutory penalties to the extent available;

S.      Award of punitive damages to the extent available; and

T.      Granting such other and further relief as this Court may deem just, equitable, or

proper.

## VIII.  JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.


Dated: February 6, 2024                         Respectfully submitted

                                                */s/Erin Green Comite*
                                                Erin Green Comite (CT 24886)
                                                Anja Rusi (CT 30686)
                                                **SCOTT+SCOTT**
                                                **ATTORNEYS AT LAW LLP**
                                                156 South Main Street
                                                P.O. Box 192

Colchester, Connecticut 06415
Tel. (860) 537-5537
ecomite@scott-scott.com
arusi@scott-scott.com

Joseph P. Guglielmo (CT 27481)
Amanda M. Rolon (admitted *pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer*
jmeltzer@ktmc.com
Lisa Lamb Port*
llambport@ktmc.com
Melissa L. Yeates**
myeates@ktmc.com
Tyler S. Graden**
tgraden@ktmc.com
Jordan E. Jacobson **
jjacobson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, P.C.**
James E. Cecchi*
Michael A. Innes**
Jordan M. Steele*
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com
jsteele@carellabyrne.com

**CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.**
Zachary S. Bower*
2222 Ponce De Leon Blvd.
Miami, Florida 33134
Tel.: (973) 994-1700
zbower@carellabyrne.com

*Counsel for Plaintiffs and the Proposed
Classes*

*Admitted *pro hac vice*; notice of
appearance forthcoming

** *Pro hac vice* forthcoming

75