**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SNYDER, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>THE CIGNA GROUP, *et al.*,<br><br>Defendants. | Case No. 3:23-cv-01451-OAW<br><br><br><br><br><br>October 21, 2026 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND FACTS ........ 2

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. Mr. Cordani Possesses Unique, Personal Knowledge that Is Relevant to Plaintiffs' Claims and Is Based on His Personal Involvement........ 7

B. Plaintiffs Have Already Deposed Other Relevant Cigna Employees. ........ 12

C. The Importance of Mr. Cordani's Testimony to this Case Defeats Burden or Prejudice. ........ 15

V. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AngioDynamics, Inc. v. Biolitec, Inc.*,
2010 WL 11541925 (N.D.N.Y. Sep. 17, 2010) ....................11

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
2025 WL 1557598 (S.D. Cal. May 29, 2025)....................11

*Batchelar v. Interactive Brokers, LLC*,
2025 WL 1993767 (D. Conn. July 17, 2025) ....................12

*Boggs v. Town of Riverhead*,
2020 WL 1929076 (E.D.N.Y. Apr. 20, 2020) ....................12

*Ceslik v. Miller Ford, Inc.*,
2007 WL 1794097 (D. Conn. June 19, 2007)....................6

*ChemImage Corp. v. Johnson & Johnson*,
No. 24-cv-02646 (S.D.N.Y. Oct. 11, 2024), ECF No. 92....................11

*CM Systems, LLC v. TransAct Technologies Inc.*,
2023 WL 3335892 (D. Conn. May 10, 2023)....................15

*Frasers Group PLC v. Gorman*,
2023 WL 6938284 (S.D.N.Y. Oct. 19. 2023)....................11

*Guidehouse LLP v. Shah*,
2020 WL 13927593 (S.D.N.Y. Oct. 27, 2020)....................14

*Hallmark Licensing, LLC v. Dickens Inc.*,
2018 WL 6573435 (E.D.N.Y. Dec. 13, 2018) ....................14

*In re Kidd*,
2020 WL 5594122 (D. Conn. Sep. 18, 2020) ....................14

*Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.*,
787 F. Supp. 3d 4 (S.D.N.Y. 2025)....................12

*Meier v. Google LLC*,
2026 WL 480773 (S.D.N.Y. Feb. 20, 2026)....................14

*Mendillo v. Prudential Ins. Co. of Am.*,
2013 WL 6511944 (D. Conn. Dec. 12, 2013)....................6, 14

*Miller v. Nat'l Life Ins. Co.*,
2008 WL 11377671 (D. Conn. Mar. 13, 2008) ....................6

*Morrison v. Scotia Cap. (USA) Inc.*,
2024 WL 3316086 (S.D.N.Y. June 7, 2024) ....................14

*Negron v. Cigna Health & Life Ins. Co.*,
No. 16-cv-01702 (D. Conn. Sep. 22, 2020), ECF No. 336 ....................7, 11

*Rodriguez v. Folksamerica Reinsurance Co.*,
2006 WL 8447951 (D. Conn. Mar. 28, 2006) ....................6, 15

*Rodriguez v. SLM Corp.*,
2010 WL 1286989 (D. Conn. Mar. 26, 2010) ....................14

*Scott v. Chipotle Mexican Grill, Inc.*,
306 F.R.D. 120 (S.D.N.Y. 2015) ....................7

*Trusz v. UBS Realty Invs. LLC*,
2011 WL 577331 (D. Conn. Feb. 8, 2011) ....................7, 12

*Vellali v. Yale Univ.*,
No. 16-cv-01345 (D. Conn. Apr. 19, 2019), ECF No. 172 ....................12

*Weber v. FujiFilm Med. Sys. U.S.A., Inc.*,
2011 WL 677278 (D. Conn. Jan. 24, 2011) ....................7

Plaintiffs Amy Snyder, Staci Foster Whitney, and Scott Schultz (collectively, "Plaintiffs") respectfully file this opposition to the Motion for Protective Order ("Motion") filed by Defendants The Cigna Group, Cigna Health and Life Insurance Co., and Cigna Health Management, Inc. (collectively, "Defendants" or "Cigna").

## I. INTRODUCTION

This class action seeks to hold Cigna liable for automatically denying medical claims through PXDX—an automatic billing-code-matching algorithm that denied member claims as "not medically necessary" or "experimental, investigational, or unproven" without any reasonable, individualized healthcare provider review, as required by law. Plaintiffs, who are or were members of Cigna-offered or administered health benefit plans (the "Plans") and had a medical claim denied through PXDX, allege that the sham PXDX review process violated the plain language of the Plans as well as the Employee Retirement Income Security Act ("ERISA") and state law, causing harm to all proposed class members.

Plaintiffs have been diligently engaged in discovery over the last several months, having taken thirteen depositions since April 2026. Plaintiffs now seek to depose David Cordani—former President, CEO, and Chairman of The Cigna Group and current Executive Chair of its Board of Directors—because he possesses unique, personal knowledge that is highly relevant and important to the development of Plaintiffs' claims. Cigna seeks to prohibit that deposition as unnecessary and premature. The record defeats both arguments.

Mr. Cordani's unique knowledge derives not from his day-to-day involvement with the claim reviews, but from his oversight and direct, personal involvement in important decisions that Cigna made regarding PXDX. Documents connect Mr. Cordani to [redacted]

[redacted] Plaintiffs seek to learn what Mr. Cordani knew, when he knew it, what he decided to do (or not do) with that knowledge, and why. That testimony will provide Plaintiffs with a more complete record of the factual underpinnings of their claims, and it cannot be obtained from any other witness. Cigna's relevance argument, therefore, finds no support in the record or the law.

Cigna's prematurity argument also fails. Plaintiffs have already deposed eleven Cigna witnesses in their individual capacities, two of whom also testified as corporate representatives of Cigna. This includes Cigna's touted alternative to Mr. Cordani, Dr. Jeffrey Hankoff, a former Medical Officer, who was deposed as both a 30(b)(6) and 30(b)(1) witness. But neither Dr. Hankoff nor any other Cigna witness could meaningfully testify to the information that Plaintiffs seek from Mr. Cordani—information that is based on his unique role and his direct participation in major decisions and discussions regarding PXDX. In fact, Dr. Hankoff's testimony, if anything, has confirmed that the discovery Plaintiffs seek can only be obtained through Mr. Cordani himself.

As such, Cigna has not and cannot satisfy its burden of showing good cause to foreclose Mr. Cordani's examination. Its Motion, therefore, should be denied.

## II. BACKGROUND FACTS

This case involves PXDX, the automated claims denial tool that Cigna first put in place in 2011. As PXDX expanded over time, Cigna would eventually subject [redacted] of claims annually to denial pursuant to PXDX in its drive to increase company savings. Plaintiffs estimate that, since its inception, PXDX has achieved a staggering [redacted] in gross denied-payment value and generated at least [redacted] in financial benefit to Cigna through avoided operational costs and avoided claim payments. [redacted]

[redacted][1]

Potential problems with this automatic review tool arose soon after implementation. [redacted][2] Mr. Cordani received other similar complaints about PXDX in the following years. More recently, Mr. Cordani was directly involved in Cigna's internal discussions and responses in the wake of an article that revealed Cigna's use of PXDX in automatically denying medically necessary claims, and to Congressional and state and federal regulator inquiries concerning PXDX, some of which drew enforcement actions and, in certain cases, staggering fines. He was also directly involved in [redacted] including, as Plaintiffs understand, [redacted][3] Despite all of this direct involvement in the precise subject matter of this case, Cigna's lawyers bother the Court with this frivolous Motion.

---

[1] Kehoe Decl. Ex. 25 at 1, (CIG_SNYDER02012285) [redacted]

[2] Kehoe Decl. Ex. 4 at 3, (CIG_SNYDER02114003, CIG_SNYDER01560942, and CIG_SNYDER01560944).

[3] Kehoe Decl. Ex. 25 at 13, (CIG_SNYDER02012285) ([redacted]

Plaintiffs notified Cigna of their intent to depose Mr. Cordani on January 14, 2026.[4] Cigna raised its objection to the deposition on January 23, 2026,[5] and sought to condition its agreement to other deposition procedures on Plaintiffs' agreement not to seek the deposition of Mr. Cordani.[6] Plaintiffs promptly responded in no uncertain terms that such a condition was unacceptable.[7] On April 7, 2026, Plaintiffs formally noticed Mr. Cordani's deposition.[8] Plaintiffs began taking depositions on April 21, 2026, beginning with the Rule 30(b)(1) and 30(b)(6) depositions of Stephanie Stinson.[9] On April 22, 2026, Cigna agreed to move forward with other noticed depositions but continued to object to that of Mr. Cordani.[10] In the meantime, Plaintiffs diligently proceeded with discovery, including taking the depositions of Dr. David Finley, former Chief Medical Officer of Policy and Enterprise Affordability, and Dr. Julie Kessel, former Medical Officer for Coverage Policy.[11] While Plaintiffs asked questions intended to probe those witnesses' knowledge and obviate the need to depose Mr. Cordani, these lower-level witnesses, including Dr. Finley and Dr. Kessel, were unable to give meaningful testimony on the pertinent issues.[12]

---

[4] Kehoe Decl. Ex. 1 at 7-8, (E. Comite 2026-01-14 email).

[5] *Id.* at 6-7, (C. Incledon 2026-01-23 email).

[6] *Id.* at 2, (C. Incledon 2026-02-17 email).

[7] *Id.* at 1, (M. Innes 2026-02-20 email ("The deposition of David Cordani is set aside to be considered separately. Plaintiffs do not agree to not depose him. If Plaintiffs notice him, we understand that Cigna will move for a protective order.")).

[8] Kehoe Decl. ¶ 6.

[9] Kehoe Decl. ¶ 7.

[10] Kehoe Decl. Ex. 2, (C. Ham 2026-04-22 email).

[11] Kehoe Decl. ¶ 8.

[12] *Id.*

On August 6, 2026, Plaintiffs served an amended notice of Mr. Cordani's deposition with a scheduled date of September 23, 2026.[13] The parties met and conferred on September 10, 2026, wherein Cigna argued that the deposition would be premature pending the conclusion of Dr. Hankoff's deposition.[14] The parties agreed to hold Mr. Cordani's deposition in abeyance pending the Court's ruling on the current Motion.[15] Plaintiffs subsequently deposed Dr. Hankoff on October 13 and 14 as a corporate designee, and October 15 in his personal capacity.[16] He, too, could not provide meaningful testimony regarding Mr. Cordani, or on certain designated topics that concern the issues Plaintiffs seek to question Mr. Cordani about, such as the ongoing governmental investigations into PXDX, Cigna's investigation of and response to the allegations in ProPublica's March 25, 2023 article, and other communications or decisions made by Cigna's Executive Leadership Team ("ELT") and/or Board of Directors regarding PXDX.[17] In fact, Dr. Hankoff invariably failed to give an affirmative response to any of Plaintiffs' inquiries regarding [redacted][18]

[13] Kehoe Decl. ¶ 9.

[14] Kehoe Decl. ¶ 10.

[15] Kehoe Decl. Ex. 3, (M. Innes 2026-09-21 email).

[16] Kehoe Decl. ¶ 12.

[17] *Id.*

[18] Kehoe Decl. Ex. 5 at 65:16-67:6, (Hankoff 30(b)(1) Dep.) [redacted].

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure establish "an extremely permissive deposition-discovery regime" that provides for taking of oral depositions regarding "any matter, not privileged, that is relevant to the claim or defense of any party." *Miller v. Nat'l Life Ins. Co.*, 2008 WL 11377671, at *1 (D. Conn. Mar. 13, 2008) (quoting Fed. R. Civ. P. 26(b)(1)). The Rules generally do not place the initial burden on the party seeking the deposition or discovery to justify its deposition and discovery requests. *Id*. Nevertheless, district courts are afforded the discretion to issue a protective order to protect a person from annoyance, embarrassment, oppression, or undue burden when the party seeking the protective order demonstrates good cause. *Mendillo v. Prudential Ins. Co. of Am.*, 2013 WL 6511944, at *2 (D. Conn. Dec. 12, 2013) (citing *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)); *see also Miller*, 2008 WL 11377671, at *1 (the party resisting discovery bears the burden of showing why discovery should be denied).

To establish good cause, courts require a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Rodriguez v. Folksamerica Reinsurance Co.*, 2006 WL 8447951, at *1 (D. Conn. Mar. 28, 2006). Precluding the deposition of a witness is "the exception rather than the rule in federal court" and considered the "most extraordinary relief." *Ceslik v. Miller Ford, Inc.*, 2007 WL 1794097, at *2 (D. Conn. June 19, 2007).

## IV. ARGUMENT

Top-level corporate executives enjoy no special immunity from discovery. *See Miller*, 2008 WL 11377671, at *2 (citing *Consolidated Rail Corp. v. Primary Indus. Corp.*, 1993 WL 364471, at *1 (S.D.N.Y. Sep. 10, 1993)). Rather, "[d]epositions of senior executives are permissible when such senior executives have had direct involvement in the underlying claims, or if the subordinates

are unable to testify in a meaningful fashion at their depositions." *Trusz v. UBS Realty Invs. LLC*, 2011 WL 577331, at *5 (D. Conn. Feb. 8, 2011). Both are true here.

Mr. Cordani has unique, personal knowledge concerning PXDX that is highly relevant to Plaintiffs' claims and that is based on his direct involvement in the facts underlying those claims. Plaintiffs are unable to obtain the sought-after information through other means, and no other witness has been able to provide the firsthand, non-speculative testimony Plaintiffs seek. The importance of Mr. Cordani's testimony also outweighs any burden or prejudice alleged by Cigna.

### A. Mr. Cordani Possesses Unique, Personal Knowledge that Is Relevant to Plaintiffs' Claims and Is Based on His Personal Involvement

Cigna has not, and cannot, establish good cause for a protective order. The record demonstrates that Mr. Cordani possesses unique, personal knowledge of PXDX that is highly relevant and necessary to Plaintiffs' claims. This knowledge derives from Mr. Cordani's direct involvement in the events at the heart of this case. Courts routinely permit executive depositions in circumstances such as this. In fact, Mr. Cordani was recently ordered to sit for deposition by another court in this district where he "may have non-cumulative knowledge of facts integral to the alleged scheme and that his knowledge as company leader is highly significant to plaintiffs' liability claims." Order re: Dep. of David Cordani, *Negron v. Cigna Health & Life Ins. Co.*, No. 16-cv-01702 (D. Conn. Sep. 22, 2020), ECF No. 336; *see also Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, 2011 WL 677278, at *3 (D. Conn. Jan. 24, 2011) (ordering apex deposition based on executive's personal involvement in facts underlying claims); *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 123-24 (S.D.N.Y. 2015) (permitting co-CEO's deposition based on his role and understanding of the matters at issue). The same reasoning applies here.

PXDX concerns reached Mr. Cordani [redacted]

[redacted][19] [redacted].[20] [redacted].[21]

In addition to those provider complaints, the record also links Mr. Cordani to broader concerns about PXDX. For instance [redacted][22] [redacted][23] Plaintiffs are entitled to examine what Mr. Cordani learned from these and other inquiries and what he did in response.[24]

---

[19] Kehoe Decl. Ex. 4, (CIG_SNYDER02114003, CIG_SNYDER01560942, and CIG_SNYDER01560944).

[20] *Id.* at 3.

[21] Kehoe Decl. Ex. 5 at 70:24-71:6, (Hankoff 30(b)(1) Dep.).

[22] Kehoe Decl. Ex. 8 at 6, (CIG_SNYDER01462769).

[23] Kehoe Decl. Ex. 9 at 1, (Ex. 115, CIG_SNYDER00004146).

[24] Kehoe Decl. Ex. 25, (CIG_SNYDER02012285) [redacted]

Mr. Cordani's involvement in the issues at the heart of this case extend even further. Cigna's stated goal and reason for PXDX was to [redacted] which PXDX was designed to do and did.[25] This goal, and Mr. Cordani's role in achieving that goal, is born out in the documents, including documents created after ProPublica's publication of *How Cigna Saves Millions by Having Its Doctors Reject Claims Without Reading Them* in March 2023. Following that article, [redacted].[26] This information seemingly was intended to and did provide Mr. Cordani with a more fulsome understanding of the state of PXDX, thus providing context to, and a basis for, the actions subsequently taken by Cigna in [redacted].

Following months of information gathering, meetings, and presentations, the [redacted]

---

[25] *See* Kehoe Decl. Ex. 26 at 69:22-71:18, (10/13/26 Hankoff 30(b)(6) Dep.) ([redacted]).

[26] *See* Kehoe Decl. Ex. 14, (Exhibit 22, CIG_SNYDER00094554) ([redacted]); Kehoe Decl. Ex. 15, (Exhibit 74, CIG_SNYDER01725984) [redacted]; Kehoe Decl. Ex. 16 at 4, (Exhibit 116, CIG_SNYDER01842165) ([redacted]); Kehoe Decl. Ex. 17 at 4, (Exhibit 4, CIG_SNYDER01842187) [redacted]; Kehoe Decl. Ex. 18, (CIG_SNYDER00086522) [redacted]; Kehoe Decl. Ex. 19 at 1, (Exhibit 27, CIG_SNYDER01728092) ([redacted]

[redacted][27] [redacted][28] [redacted][29]

Documents bear out Mr. Cordani's decision-making authority for these changes distinctly. [redacted][30] [redacted][31] [redacted][32] [redacted][33] [redacted]

> [redacted][34]

---

[27] Kehoe Decl. Ex. 25 at 2, 4, (CIG_SNYDER02012285).

[28] *Id.* at 11.

[29] *Id.*

[30] Kehoe Decl. Ex. 10 at 9, (Exhibit 75, CIG_SNYDER01359853).

[31] *Id.* at 11. Unless otherwise noted, all emphasis is added.

[32] Kehoe Decl. Ex. 11 at 2, (Exhibit 25, CIG_SNYDER00049034).

[33] Kehoe Decl. Ex. 12 at 2, (CIG_SNYDER00093104).

[34] Kehoe Decl. Ex. 13 at 3, (CIG_SNYDER01572232).

The reasons for these changes, and what they meant for previously denied claims bear directly on Plaintiffs' challenges to PXDX. None of the other deponents were members of the ELT, and they did not have any personal knowledge of internal processes or practices of the ELT with regard to PXDX. These records and testimony support a focused examination of Mr. Cordani's knowledge of PXDX and his role in [redacted].[35] Taken together, these documents and communications undoubtedly "raise an inference that [Mr. Cordani] may have been more than a mere recipient of information." *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2025 WL 1557598, at *6. Together with PXDX's financial significance—[redacted]—they establish a concrete basis to examine Mr. Cordani on his knowledge and involvement in issues critical to this case, as the *Negron* court similarly found.

Cigna's authorities do not change this analysis. They involve materially different situations, including where the moving parties, quite unlike Plaintiffs here, were unable to provide supporting record evidence for their requests. For instance, in *ChemImage*, plaintiffs sought but were denied the deposition of a former company executive, where the case simply concerned a simple dispute over a single contract within the company's broader portfolio. *See* Order at 3-4, *ChemImage Corp. v. Johnson & Johnson*, No. 24-cv-02646 (S.D.N.Y. Oct. 11, 2024), ECF No. 92. In *Frasers Group PLC v. Gorman*, the requesting party "could muster only a single document" supporting the executive's personal knowledge. 2023 WL 6938284, at *3 (S.D.N.Y. Oct. 19. 2023). And in the

---

[35] That PXDX operated company-wide further supports his deposition. *See AngioDynamics, Inc. v. Biolitec, Inc.*, 2010 WL 11541925, at *4 (N.D.N.Y. Sep. 17, 2010) ("Protective orders are generally denied when the claims allege facts concerning widespread corporate policies or decisions about a company's development."); *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2025 WL 1557598, at *7, (S.D. Cal. May 29, 2025) (deposition of CEO and former COO permitted because they "were involved in meetings and/or discussions about authorization or implementation of [the alleged misconduct]").

government-official cases, plaintiffs failed to even connect the officials' purported knowledge to any of their claims. *See Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of N.Y.*, 787 F. Supp. 3d 4, 7 (S.D.N.Y. 2025); *Boggs v. Town of Riverhead*, 2020 WL 1929076, at *3 (E.D.N.Y. Apr. 20, 2020).

Here, Mr. Cordani's direct involvement in, and knowledge of, the issues at the heart of this case is not speculative or superficial. Instead, discovery directly connects Mr. Cordani to the company-wide claims process at issue in this case, the complaints and investigations it generated, and Cigna's decisions regarding [redacted].[36]

**B. Plaintiffs Have Already Deposed Other Relevant Cigna Employees**

Cigna's argument in its Motion that Plaintiffs must first depose lower-level employees rests almost exclusively on the premise that Dr. Hankoff had not yet been deposed. Plaintiffs have now deposed Dr. Hankoff in both his individual and corporate capacities. His testimony confirms, however, that he, like the other witnesses deposed, is unable to provide critical information that is uniquely within Mr. Cordani's knowledge base. Depositions of senior executives are permissible when subordinates cannot testify meaningfully about the matters as issue. *See Batchelar v. Interactive Brokers, LLC*, 2025 WL 1993767, at *1 (D. Conn. July 17, 2025) (quoting *Trusz*, 2011 WL 577331, at *5). As Cigna concedes, this is an independent basis for denying its request for a protective order. *See, e.g.*, *Trusz*, 2011 WL 577331, at *5 ("Depositions of senior executives are

[36] Plaintiffs have made this showing despite Cigna's refusal to designate Mr. Cordani as a document custodian or fully respond to Plaintiffs' document requests regarding Board-related materials. The absence of a fuller record of his communications, therefore, cannot and should not support shielding him from examination. Nor would some overlap with other witnesses' knowledge, as his direct involvement provides an independent basis for examination. *See* Order at 7, *Vellali v. Yale Univ.*, No. 16-cv-01345 (D. Conn. Apr. 19, 2019), ECF No. 172.

permissible when such senior executives have had direct involvement in the underlying claims, or if the subordinates are unable to testify in a meaningful fashion at their depositions.").

Including Dr. Hankoff, Plaintiffs have now deposed eleven Cigna witnesses across several departments and levels of seniority. None could meaningfully testify to information within Mr. Cordani's unique knowledge or with respect to the specific circumstances of his direct involvement with PXDX and the company's response to the events of 2023, even when shown relevant documents.[37] Further, despite Cigna's emphasis on Dr. Hankoff's deposition, his testimony only reinforced the gaps in the record regarding the executive decision-making process in relation to PXDX.[38] In fact, Plaintiffs have kept Dr. Hankoff's Rule 30(b)(6) deposition open precisely *because* he could not meaningfully testify on certain designated topics, including those regarding the regulatory investigations into PXDX and Cigna's investigation of the allegations in

---

[37] Kehoe Decl. Ex. 21 at 236:1-5, (Grider Dep.) ([redacted]), 236:23-37:4 ([redacted]); Kehoe Decl. Ex. 22 at 130:5-32:7, (Stinson 30(b)(1) Dep.) [redacted]); Kehoe Decl. Ex. 23 at 437:4-438:11, (6/25/26 Kessel Dep.) ([redacted].

[38] Kehoe Decl. Ex. 24 at 28:10-29:5, (10/14/26 Hankoff 30(b)(6) Dep.) ([redacted]), 29:14-30:2 ([redacted]), 35:8-13 [redacted]), 56:1-57:14 ([redacted]), 75:5-76:9 [redacted], 77:23-78:19 [redacted]); Kehoe Decl. Ex. 5 at 65:16-67:6, (Hankoff 30(b)(1) Dep.) ([redacted]), 67:7-21 [redacted], 69:11-15 ([redacted]), 82:19-25 [redacted], 95:2-19 ([redacted], 116:23-117:8 ([redacted]).

ProPublica's March 25, 2023 article (Topics 17 and 18)—subjects on which Mr. Cordani appears to possess substantial, and highly relevant, information.

The record demonstrates that Mr. Cordani's unique knowledge is not coextensive with that of either Dr. Hankoff or any other Cigna witness for that matter. Further, [redacted] were made by Dr. Scott Josephs, the former Chief Medical Officer of Cigna Healthcare, [redacted] Dr. Josephs, however, passed away in 2025. Therefore, additional testimony from lower-level employees cannot be substituted for Mr. Cordani's own account. *See In re Kidd*, 2020 WL 5594122, at *9 (D. Conn. Sep. 18, 2020) (rejecting movants' argument that other employees should be deposed first because movants failed to establish that the other employees' knowledge "was coextensive with that of [movants]"); *see also Mendillo*, 2013 WL 6511944, at *3 (permitting deposition of executive where other employees were unable to testify as to the substance of their conversations with the executive).[39]

[39] Cigna's cases are inapposite. *See, e.g.*, *Rodriguez v. SLM Corp.*, 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010) (requiring exhaustion of lower level depositions before plaintiffs may renew request to depose higher level executives upon a showing that they have unique factual information and institutional knowledge); *Meier v. Google LLC*, 2026 WL 480773, at *2 (S.D.N.Y. Feb. 20, 2026) (refusing to order apex deposition until plaintiffs can show through discovery that executive possesses a unique knowledge pertinent to the issues in the case); *Morrison v. Scotia Cap. (USA) Inc.*, 2024 WL 3316086, at *2 (S.D.N.Y. June 7, 2024) (denying apex deposition where plaintiff deposed other individuals who have far more knowledge of topics relevant to the case than the executive); *Hallmark Licensing, LLC v. Dickens Inc.*, 2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018) (declining to order apex deposition prior to 30(b)(6) deposition); *Guidehouse LLP v. Shah*, 2020 WL 13927593, at *1 (S.D.N.Y. Oct. 27, 2020) (declining to order deposition of executive prior to 30(b)(6) representative where that deposition was likely to narrow the scope of the executive's testimony).

### C. The Importance of Mr. Cordani's Testimony to this Case Defeats Burden or Prejudice

Finally, Cigna cannot legitimately argue that Mr. Cordani's deposition would "unduly annoy, embarrass or burden" the company or Mr. Cordani himself. *Rodriguez*, 2006 WL 8447951, at *1. First, Plaintiffs have thoroughly questioned several other Cigna witnesses, yet gaps in the record remain that only Mr. Cordani can fill. Second, the documents and testimony produced to date establish that Mr. Cordani has unique knowledge of matters that are highly relevant to Plaintiffs' claims. Third, Plaintiffs are not seeking Mr. Cordani's deposition with the intent to harass, annoy, or seek speculative or cumulative testimony. Fourth, Plaintiffs have supported their request with record evidence highlighting the critical roles Mr. Cordani played and the direct involvement he had with respect to the issues that are central to Plaintiffs' claims.[40] Fifth, Mr. Cordani is no longer running the day-to-day operations at Cigna and therefore any claims of burden or "business disruption" are purely hypothetical. *Contra CM Sys., LLC*, 2023 WL 3335892, at *1. Certainly, they do not outweigh the importance of his anticipated testimony.

## V. CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court deny Cigna's Motion for a Protective Order.

DATED: October 21, 2026

*/s/ Lisa M. Kehoe*
Joseph H. Meltzer*
jmeltzer@ktmc.com
Lisa M. Kehoe*
lkehoe@ktmc.com
Kye Kyung Park*

[40] *CM Systems, LLC v. TransAct Technologies Inc.* does not support Cigna's argument. 2023 WL 3335892, at *1 (D. Conn. May 10, 2023). That case merely mentions the "likelihood of harassment and business disruption" as factors to be considered in deciding whether to grant a protective order, but ultimately granted the order because, unlike here, the record did not establish the executive's knowledge or that the requesting party attempted to obtain similar testimony elsewhere. *Id.*

apark@ktmc.com
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Erin Green Comite (CT 24886)
Anja Rusi (CT 30686)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, Connecticut 06415
Tel. (860) 537-5537
ecomite@scott-scott.com
arusi@scott-scott.com

Joseph P. Guglielmo (CT 27481)
Amanda M. Rolon*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

James E. Cecchi*
Michael A. Innes**
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com

Zachary S. Bower*
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
2222 Ponce De Leon Blvd.
Miami, Florida 33134

Tel.: (973) 994-1700
zbower@carellabyrne.com

*Admitted *pro hac vice*
** – *Pro hac vice* forthcoming

*Counsel for Plaintiffs
and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2026, I caused a true and correct copy of the foregoing document to be served electronically on counsel for all parties.

*/s/ Lisa M. Kehoe*
Lisa M. Kehoe